WEST *v.* TODD.

4-7375                                        180 S. W. 2d 522

Opinion delivered May 29, 1944.

*DuVal L. Purkins,* for appellant.

*C. C. Hollensworth* and *Aubert Martin,* for appellee.

GRIFFIN SMITH, Chief Justice. The issue is whether H. R. Todd is entitled to participate in certain net profits earned by the department store operated at Warren,

Arkansas, by West Brothers, a partnership as to which Todd was not a member.

Appellants West own a chain of stores. In 1939 Todd, who had been an assistant, was transferred to Texarkana as manager. In July of the following year he went to Warren and took charge of the local business on order of S. E. Humphreys, superintendent.

Todd's first employment by the partnership was at Natchitoches, Louisiana, where in 1936 he was engaged personally by H. O. West as assistant manager. Todd testified that compensation was to be $100 per month, plus five percent of net profits. If made manager he was to receive fifty percent of the first $5,000 and twenty-five percent of all over, after advances had been deducted. As manager his salary was increased to $125 per month, and later to $150. He says there was no agreement for a definite period of time.

Todd resigned, effective August 30, 1942, a telegram to that effect having been sent to the general office at DeRidder, La. The resignation was accepted with expressions of regret.

No claim for profit-participation was made until January 7, 1943. Suit was then filed without prior notice, allegation being that earnings for the first seven months of the preceding year had been $6,153.09, the apportionable percentage of which was $2,788.27, less collected salary of $1,050, leaving $1,738.27. An additional allegation was that the plaintiff would be entitled to twenty-five percent of August profits. The amount was then unknown, but at trial it was stipulated to be $678.76. By this computation the demand was increased to $1,907.96.

When it was shown that profits for the full year were $20,219.63, Todd enlarged his claim, and made the statement shown in the margin.[1] The jury returned a verdict for $1,200, for which there was judgment.

[1] The statement was: "According to the figures stipulated (20,219.63), if the manager had completed a full year he would have been entitled to $6,304.90, against which his drawing account and borrowed money should be deducted. I claim I am entitled to two-thirds of that, less my drawing account, because I remained in the Warren store eight months, or the sum of $3,003.26." (In an amended complaint he asked for $3,112.50.) At one time in the testimony Todd said: "According to the monthly statement furnished me July 31, I was entitled to a bonus of $957.57."

It is difficult to harmonize some of the figures—a task not required of the Court. For example, Todd testified that ". . . to July 31, 1942, the store had made $3,937.13—in round figures $3,900 in eight months, $20,000 in twelve months and according to the July 31 statement they owed me $1,968.57, less my drawing account of $1,050, or the net amount of $918.57."

The latter claim does not agree with $957.57 set out in a monthly statement. There are other differences.

A. B. Tollett, who succeeded Todd, received a bonus of $4,268 for the last four months of 1942 because, as he says, "I was in the store at the end of the year."

The only material difference between Todd's testimony and that given by West is that West says the year-end agreement was expressed, while Todd insists nothing was said about the time his employment should continue.

The verdict seems to have been a compromise, not predicated upon any definite figure. The jury had a right, of course, to believe Todd and to disbelieve West. Seemingly it did neither. Each witness was an interested party, and his testimony will not be treated as undisputed even if no conflict appeared.

Did the jury have a right to interpret this contract? That is its province in case of ambiguity. If not indefinite—that is, if the meaning of what was said is so clear that reasonable minds would agree—then construction is for the Court. Eliminating West's testimony, we have Todd's statement that nothing was said regarding the time he should serve, or when the bonus would be payable.

In circumstances such as we are dealing with it is important to know what meaning the parties placed upon the contract when it was made, or during performance, and this the Court (without aid of jury) should do if the conduct is susceptible of but one conclusion.

According to Todd, and the balance sheet he used, net profits at the time he resigned were less than five

thousand dollars. In the light of all testimony, showing the most amicable relationships throughout, and the expression by West that Todd was an excellent manager, it is strange that if the claimant had thought his contract contemplated payment of a bonus as here contended for, he would have waited four months before mentioning this view.

Seemingly Todd, after December 31, ascertained that substantial profits had been made, and then concluded to place upon the contract the construction set out in the complaint. But even after that he changed positions. Not satisfied with the first contention that participation should be upon an eight months basis, he shifted to a contention that the much larger profits earned under supervision of his successor should be considered in determining his over-all apportionment. Under this construction, his contribution to earnings did not end with severance of the employment relationship, but was projected into the future in such a way as in effect to constitute a partnership in fact, though not at law.

It is strongly indicated that Todd did not, when he resigned, regard the contract as one entitling him to participation in profits. In not at once asking that he be paid he inferentially assented to the construction now sought by West. However, Todd disputes West's testimony. If, as appellee contends, nothing was said about the employment period, there was sufficient ambiguity in this verbal arrangement (a conversation never clarified by writing) to justify the Court in having the jury say whether designation of a monthly salary, coupled with methods of payment and periodical statements showing bonus accruals, and a consideration of all other relationships, were sufficient to create in the mind of a reasonable man (and particularly one situated as Todd was) a belief that it was West's purpose to pay the bonus in the event of resignation before a year (any year) should end.

Before Todd testified, two witnesses were examined for the purpose of informing the jury that he was a man of good character, entitled to belief. Objection was made,

overruled, and exceptions saved and brought forward in the motion for a new trial. It was a mistake to admit such testimony at that time. Pope's Digest, § 5199. Although conceded in oral argument that this was error, contention is that it was cured when West subsequently testified to Todd's good character. We do not think so. Reputation for truth and veracity in the community in which a witness lives is the matter of concern. Character may be different from reputation.

In any event it was not proper to prepare the minds of jurors with a build-up intended to convince them in advance of the plaintiff's appearance that here is a man whose word is guaranteed by good citizens—in the instant case one was a minister, the other a postmaster.

For the error in admitting this testimony the judgment is reversed; but the cause is remanded for a new trial. Todd may not recover an amount in excess of a percentage of profits earned while he was manager. It is so ordered.