DRENNAN *v.* McCARTHY, GUARDIAN.

4-8507                                                210 S. W. 2d 791

Opinion delivered April 19, 1948.

*S. L. White,* for appellant.

*Moore, Burrow, Chowning & Mitchell,* for appellee.

ED. F. McFADDIN, J. By appeal and cross-appeal there is presented this multi-sided litigation which involves, in the main, questions as to (1) the minors' right to collect rent from the homestead, and (2) the widow's dower in personalty. A chronological statement will present the picture.

C. L. McCarthy was a resident of Pulaski county, and a valuable and trusted official (secretary-treasurer) of the Little Rock Furniture & Manufacturing Company. He drew a salary of $75 per week, plus 5% of the net annual profits of the corporation. This 5% was called a ''bonus.'' The fiscal accounting period of the Little Rock Furniture & Manufacturing Company (hereinafter called the corporation) ended on May 31st each year; and as of that date the bonus was determined and paid. In the latter part of November, 1945, Mr. McCarthy became ill with a heart condition. At its own expense, the corporation sent him to various specialists, but to no avail. He died April 2, 1946, survived by his wife (appellant) and his two minor children, Charles, aged 10, and John, aged 5. These were Mr. McCarthy's children by a former marriage; he and appellant were married in September, 1944. Mr. McCarthy had requested that his brother, Will McCarthy, be appointed guardian of the two minors; this was done, and we will hereinafter refer to Will McCarthy as guardian. On the widow's petition the Commercial National Bank was appointed administrator of the estate of C. L. McCarthy (hereinafter referred to as the deceased).

The corporation paid McCarthy his salary of $75 per week during his entire illness; and continued to pay the salary, post-mortem, to May 31, 1946, and also paid the bonus for the full fiscal year. The calculation of the post-mortem salary and the bonus, less deductions, was as follows:

| | | |
|---|---:|---:|
| Post-mortem salary—Gross | | $ 765.00 |
|     Less old-age benefits | 6.75 | |
|     Less U. S. withholding tax | 33.30 | |
|     Less personal account | 308.92 | |
|         Total deductions | | 348.97 |
|         Net after deductions | | 326.03 |
| Bonus—Gross | $8,821.49 | |
|     Less old-age benefits | 13.50 | |
|     Less U. S. withholding tax | $1,499.65 | |
|         Total deductions | | 1,513.15 |
|         Net after deductions | | 7,308.34 |
|         Total net | | $7,634.37 |

This calculation is the basis of the contention as to the widow's dower. The deceased owned other personal property, but as to the widow's dower in such other personal property, there appears to be no dispute in this litigation. The only real estate owned by the deceased was his home in Little Rock, then occupied as a homestead by the widow and the two minors.

About two weeks after his appointment, the guardian moved the two minor children from their homestead to the home of the guardian. Some time about October, 1946, the widow remarried, and is now Mrs. Sammie L. Drennan. Controversies arose as to the corporation's calculation (hereinbefore set out), and also as to the minors' homestead claims. Thereupon the widow [1] (appellant) instituted this suit in the chancery court against the corporation, the guardian, and the administrator. She alleged, *inter alia,* that she had not received all of her dower in the money paid by the corporation. The wording of the allegation was:

"That the defendant's (corporation's) agents in computing the widow's dower and the interest of said minors, erroneously charged and deducted from the gross amounts due, certain sums and items for Old Age Benefits and Federal Withholding Taxes. That under the law, plaintiff is entitled to her dower therein without deduction. That she is entitled to an accounting

[1] Although Mrs. McCarthy has remarried, and is now Mrs. Drennan, we will continue to refer to her as the widow, since her claims arise because of such status.

between the Little Rock Furniture & Mfg. Co., Will Mc-Carthy, Guardian, the administrator and herself to the end that the court may accurately determine and award her judgment, against the proper party, for the balance due her as dower therein."

The administrator demurred to the complaint, saying: "This court has no jurisdiction over the person of the defendant or the subject matter of the action." The corporation filed a general denial. The guardian, in addition to a general denial, filed a cross complaint in which he claimed that the widow should be required to pay the minors one-half of the fair rental value of the homestead from the time the minors ceased to occupy the homestead. The hearing in the chancery court resulted in a decree:

1. sustaining the demurrer of the administrator;

2. declaring that the widow was entitled to statutory dower in one-third of the net $7,634.37—and not in the gross $9,496.49—shown in the corporation's calculation;

3.. finding that the widow was liable to the minors for one-half of the. fair rental value of the homestead from June 1, 1946; and

4. fixing the said one-half at $37.50 per month.

From that decree the widow has perfected a direct appeal, and the guardian a cross-appeal. Appellant says:

"The court erred in the following respects:

"I. in dismissing as to the administrator;

"II. in refusing to appoint a master to state an account between the parties; .

"III. in charging appellant with one-half of the rental value of the homestead;

"IV. in refusing to award appellant judgment for dower in the gross earnings (5 percent.) due her husband by the employer without deduction for taxes, old age benefits or other charges."

In discussing and disposing of these four assignments, we will also dispose of the guardian's cross-appeal.

I. *The Demurrer of the Administrator.* The chancery court was correct in refusing to allow the widow to sue the administrator in equity in a matter involving how much dower she was entitled to receive in the personalty of the estate. The administration of the estate was pending in the probate court, and, there, the widow had already received, as dower, some amounts from the bank account and also some corporation stock certificates. She did not allege, in this equity suit, that she had made any demand on the administrator that it institute proceedings against the corporation and the guardian; neither did she allege any fraud, accident, mistake, or impending irremedial mischief. When the probate court has undertaken to act, equity will not take jurisdiction while adequate right of redress in probate is still available, and the estate is in process of administration. In *Reinhardt* v. *Gartrell,* 33 Ark. 727, Mr. Justice EAKIN discussed Art. VII, § 34 of our present Constitution, and made these sage observations as to the extent and limitations on the power of chancery to take jurisdiction in estates pending in the probate court:

"The courts of Chancery have no power to take such cases out of the Probate Courts, for the purpose of proceeding with the administration. But their power and functions to relieve against fraud, accident, mistake or impending irremediable mischief, is universal; extending over suitors in all courts, and over the decrees in those courts, obtained by fraud, or rendered under circumstances which render it inequitable that they should be enforced. Hence, any frauds in the settlements of administrators or executors may be corrected. When that is done, if there be still a necessity for continued proceedings in the course of administration, such proceeding should go on in the Probate Court, upon the basis of the reformed settlement. The object of Chancery intervention having been accomplished, the jurisdiction in equity should cease with the necessity."

Another phase of probate-chancery jurisdiction will be discussed in Topic IV, *infra*.

II. *Necessity of a Master.* There was no abuse of discretion by the chancery court in refusing to appoint a master. What we said in *Norden v. McCallister*, 207 Ark. 1101, 184 S. W. 2d 459, is apropos here:

"We find nothing in the record to indicate any necessity for the appointment of a master. The chancery court is clothed with considerable discretion as regards the appointment of a master. *Bryan v. Morgan*, 35 Ark. 113; *Parker v. Wells*, 84 Ark. 172, 105 S. W. 75; 19 Am. Juris. 254; 30 C. J. S. Equity, § 522, 919. In this case the chancery court determined directly from the testimony the amounts . . . The accounts were not complicated. . . . Certainly there was no abuse of discretion by the chancery court in refusing to appoint a master under the facts in this case."

III. *Charging the Widow with One-Half of the Rental Value of the Homestead.* As previously stated, the guardian took the two minors from their homestead to his own residence prior to June 1, 1946; and the chancery court held that the widow must pay the guardian one-half of the rental value of the homestead from that date. The proof showed that the widow desired that the children remain with her; that the homestead was open to them if the guardian would permit them to return; that if the homestead were rented, it would rent at a monthly yield of from $60 to $100; but that the property was occupied by the widow, her present husband, her sister and the family of the latter. The widow testified that her sister (Mrs. Hogue) paid the utility bills and looked after the yard and gave the widow her meals in return for Mrs. Hogue and her family living in the homestead. It is admitted that the widow had not abandoned the homestead. The Constitution of this State, Art. IX, § 6, says:

"If the owner of a homestead die, leaving a widow, but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and

the rents and profits thereof shall vest in her during her natural life, provided that if the owner leaves children, one or more, said child or children shall share with said widow and be entitled to half the rents and profits till each of them arrives at twenty-one years of age—each child's right to cease at twenty-one years of age—and the shares to go to the younger children, and then all to go to the widow, and provided that said widow or children may reside on the homestead or not; and in case of the death of the widow all of said homestead shall be vested in the minor children of the testator or intestate.''

Two cases involving this Constitutional provision are *Winters* v. *Davis,* 51 Ark. 335, 11 S. W. 420 and *Sparkman* v. *Roberts,* 61 Ark. 26, 31 S. W. 742. The opinions in both of these cases were written by Mr. Justice BATTLE, and are typical specimens of his logical thinking and clear expression. In *Winters* v. *Davis,* Justice BATTLE recited that the widow: '' . . . denied to the minor children the right to hold possession and share the rents and profits thereof with her. For a part of the time she rented it (homestead) and collected the rents. Three of the minor children bring this action against her and her present husband for their share of the rents and profits.'' The lower court allowed recovery to the minors; and the decree was affirmed by this court.

In *Sparkman* v. *Roberts, supra,* the widow's second husband occupied the rural homestead for seven years, and collected the rents and also used the land himself. Three of the minor children, entitled to homestead, brought action against the stepfather for their share of the rents. From an historical review, Justice BATTLE reached the conclusion that the framers of our present Constitutional provision (Art. IX, § 6) intended that the widow and minor children should each: '' . . . be accountable to the others for any rents, profits and benefits he or she may receive from the homestead in excess of his or her share, the widow being entitled to one-half and the children to the remainder.''

Justice BATTLE continued: A careful consideration of the Constitution will show that such is its intention. In giving to the minor children the right to share the homestead equally with the widow, the Constitution at the same time vested them with the right to one-half of the rents and profits. As to the use, occupancy, rents and profits, they are placed upon an equality with the widow. The conferring upon them these rights to the exclusion of the adult children, and exempting them from the duty to remain upon the homestead, is a recognition of their probable need of the assistance which can be derived therefrom for their support or education, and of their inability, without it, to make adequate provision for themselves; and is an evidence of the intention of the Constitution to supply this want by the homestead, so far as it will extend. They were doubtless exempted from the duty to occupy the homestead for the purpose of maintaining their right to the same, because it was manifest, from their age, inexperience, incapacity, and lack of property, they might not make it profitable or desirable to do so. In both events, provisions are made for them. In the latter it was intended that they should have one-half of the rents or profits derived therefrom, if occupied by another. In every event they are to have the benefit of the homestead during their minority. To permit the widow, or any one in her right, to use and occupy it without liability to them for one-half of the benefits thereby enjoyed would defeat the object, in part, of the Constitution in making this provision for them. A construction that will give her the right to do so is contrary to the spirit and intention of the Constitution. Hence we conclude that the widow, if she occupy and use it, is liable to the minor children for one-half of its rental value, that being the benefit derived.''

It will be observed that Mr. Justice BATTLE said that the minors were entitled to ''one-half of the rents or profits derived therefrom, if occupied by another.'' In the case at bar the widow did not deny the minors access to the homestead—as in the Winters case; furthermore, in the case at bar, the guardian has voluntarily removed

the minors and should not be allowed to force the widow to pay *market value rent* on her own homestead. There are some differentiating facts between the two adjudicated cases and the case at bar; nevertheless, the two adjudicated cases are authority for our holding—which we now make—that the widow here is liable to the minors for one-half of the value of such rents and profits *as the widow actually received* from the homestead. She is entitled to occupy the homestead, but, in allowing Mrs. Hogue to occupy the house, the widow has been receiving her part of the utilities and her meals, linens, etc. These items, over and above her own occupancy, constitute the "rents and profits" that she is receiving, and she should pay to the minors one-half of the value of such rents and profits. There is no suggestion of subterfuge by the widow in allowing Mrs. Hogue to occupy the house. If such subterfuge existed, then the widow would be liable for half of the rental market value of the homestead.

We hold that the chancery court used an erroneous formula—*i. e.*, rental market value—for charging the widow with the rents and profits of the homestead instead of requiring the widow to pay one-half of the rents and profits *actually received* by her. For this reason, so much of the decree as adjudicated the amount of the rents must be reversed, and the cause remanded for a further hearing on this phase of the case in order to determine the correct amount in the light of this opinion. The homestead was the only real estate of the deceased, so settling the homestead issue in this chancery case is not an invasion of the jurisdiction of the probate court.

IV. *The Widow's Dower in the Corporation Bonus and Post-Mortem Salary.* We have previously copied the calculation of the corporation as to these items. The gross total of such salary and bonus before any deductions was $9,496.49. The total of the deductions was $1,862.12, leaving a net balance of $7,634.37. The effect of the chancery decree was to award the widow $2,544.77,

which is one-third of the net. From such decree the widow has appealed. She claims that she is entitled to $3,165.49, which is one-third of the gross, and that the deductions are to be charged against that part of the estate other than her dower. The guardian has cross-appealed; he claims (a) that the widow is not entitled to any of the post-mortem salary, since the husband was never "seized and possessed of it;" and (b) that the widow is entitled to dower in only that portion of the bonus which had accrued on November 22, 1945—the date Mr. McCarthy ceased to be active in the business. The guardian claims this bonus—on such date—to be $4,214.60.

After the death of Mr. McCarthy the corporation took the position that any payments it made thereafter (either post-mortem salary or bonus) were mere donations, and that the corporation could pay such amounts to either the administrator or the guardian, as the corporation elected. Accordingly, the corporation paid the administrator only $3,762.84, and paid the guardian, direct, the sum of $3,871.52. The testimony shows that it was the policy of the corporation to pay its officials (such as Mr. McCarthy) a stipulated salary, and also a part of the net profits; that when other officials had died the salary and bonus had always been calculated to the end of the fiscal year. With this established policy having been shown, it follows that what the corporation did was to pursue its course of business rather than to "make a donation." This case is therefore different in facts from that of *West* v. *Todd,* 207 Ark. 341, 180 S. W. 2d 522.

From a careful review of the evidence, we reach the conclusion that the corporation should have paid to the administrator whatever was the entire amount that the corporation was to pay, and should have left to the probate court the fixing of dower from said total. Having reached this conclusion, we therefore hold that the guardian is in error in claiming that the widow has been overpaid; she is entitled to a statutory dower of one-third in the total of whatever amount the corpora-

tion should have paid. The administrator should have paid her one-third of the $7,634.37, and then proceeded against the guardian and the corporation to recover any amounts due the estate. This figure is independent of the widow's contention concerning the deductions.

We come then to the widow's contention that her dower should have been one-third of the gross, instead of one-third of the net. She particularly objects to the withholding tax of $1,499.65 on the bonus, and claims that the U. S. Statutes do not require such a withholding tax on a bonus accrued and paid after the taxpayer's death. But in making this claim, she is seeking to have the chancery court supersede the probate court in the alloting of her dower in the personal property. Prior to the filing of this suit she had petitioned the probate court for an assignment of dower in some of the personal property. She had received dower in the bank account of the deceased, and also had received dower in the corporation stock owned by the deceased. Having asked the probate court to assume jurisdiction to assign the dower to her in the personal property, and having received a portion of such dower, she cannot now invoke chancery jurisdiction as a substitute for the already active probate jurisdiction. We have previously mentioned that she made no allegations concerning fraud, accident, mistake or impending irremedial mischief.

In *Shields* v. *Shields*, 183 Ark. 44, 34 S. W. 2d 1068, after the probate court had undertaken to assign dower to a widow in the personal property, she filed an independent action in the chancery court. We dismissed the chancery action, saying:

"The jurisdiction of the probate and the chancery courts in the assignment of dower in both real estate and personalty is therefore concurrent, and the case before us is one where the jurisdiction of the chancery court was invoked to assign dower in the real estate, but not in the personal estate, whereas the administrator had made a partial assignment of dower, which action he had reported to the probate court. The money

given and paid the widow by the administrator consti-
tuted a partial assignment of dower, and the probate
court approved the report thereof. This was an as-
sumption of jurisdiction by the probate court to assign
dower in the personalty, and after jurisdiction had been
assumed by the probate court for this purpose, the chan-
cery court should not have interfered, as the jurisdic-
tion of the two courts was concurrent, and the jurisdic-
tion of the probate court had first been invoked in re-
gard to the personalty. *Phillips* v. *Phillips,* 143 Ark. 240,
220 S. W. 52; *State* v. *Devers,* 34 Ark. 188.''

That case is ruling here. The widow could have
petitioned the probate court to require the administrator
to discover additional assets,[2] and to require the admin-
istrator to file suit against the corporation [2] to determine
whether the corporation had correctly or erroneously
withheld and paid the U. S. Government the withholding
tax on the bonus. But the widow, under the facts in this
case, is not free to bring an independent suit in equity
for her dower, since she has already invoked the probate
jurisdiction, and has made no allegations concerning
fraud, accident, mistake, or impending irremedial mis-
chief. The demurrer of the administrator presented the
issue as to the right of the widow to maintain this suit,
and that demurrer necessarily went to the jurisdiction
of the chancery court to determine dower in the proceed-
ings between the widow and the corporation. The sus-
taining of that demurrer was correct (as we pointed out
in Topic I, *supra*), and the effect of such ruling was to
leave the chancery court without jurisdiction to consider
the widow's claim for further dower as against the cor-
poration.

Conclusion: It follows that the chancery court was
correct: (a) in sustaining the demurrer of the adminis-
trator, (b) in refusing to appoint a master, and (c) in
holding that the widow was liable to the guardian for
one-half of the rents and profits received by her from
the homestead. But the chancery court was in error:

---

[2] See *Fancher* v. *Kenner,* 110 Ark. 117, 161 S. W. 166, and *Shane*
v. *Dickson,* 111 Ark. 353, 163 S. W. 1140.

(a) in adjudging the amount of such rents and profits as it did, and (b) in entertaining jurisdiction of the widow's complaint against the corporation involving the question of dower. The cause is therefore affirmed in part and reversed in part, and remanded for further proceedings not inconsistent with this opinion.