ROSE v. MILLION.

Opinion delivered February 28, 1921.

1. MORTGAGES—EFFECT OF FAILURE TO RECORD.—Although the holder of a first chattel mortgage failed to record it properly, and the second mortgage was properly recorded, the lien of the first mortgage is superior to that of the second where the latter contained a recital that it was subject to the former.

2. NOVATION—TRANSACTION HELD NOT TO BE.—Where sureties on a note of the original purchaser of mules took a mortgage on the mules from such purchaser, and on his default on the note sold the mules to a second purchaser, who gave a note therefor to the original vendor with the same sureties, who took a mortgage from the second purchaser, the substance of the transactions was not a novation, but a surrender of the mortgaged property by the original purchaser and a resale to the second purchaser.

3. MORTGAGE—DISCHARGE OF LIEN.—Where a mortgagee of chattels entered no satisfaction of record and did not surrender the mortgage, but took the property with the mortgagor's consent in lieu of a formal foreclosure, and sold it to another, *held* that there was no discharge of the mortgage lien, so as to let in a subordinate mortgage lien; the junior mortgagee having a right to redeem.

4. PRINCIPAL AND SURETY—MORTGAGE TO ONE SURETY INURING TO ALL.—The obligation of sureties on a note being joint as well as several, a mortgage of chattels executed to one of them inured to the benefit of all, so that it is unnecessary to reform such mortgage to include the other sureties.

5. EQUITY—LOOKS TO SUBSTANCE.—Equity looks to substance, rather than the form, of a transaction in order to determine the rights of the parties.

Appeal from Randolph Chancery Court; *L. F. Reeder,* Chancellor; affirmed.

*W. L. Pope,* for appellant.

1. There are two reasons why the decree should be reversed. (1) There was a complete satisfaction and discharge of the debt for which the mortgage sought to be foreclosed was given. (2) No such loss or damage is shown as would entitle plaintiff to a foreclosure.

There was a complete novation which discharged the Weeks debt. A release or satisfaction prior in time in-

ures to the benefit of the junior incumbrancer. 2 Cyc. 1222-4. Where a prior mortgagee discharges his mortgage debt and takes a new one for the same debt, he loses his priority, and the new mortgage is postponed to the intervening old liens. 55 Vt. 329.

There was a complete novation and an extinguishment of the old debt. 39 Cyc. 1130; 3 Ark. 216; 4 *Id*. 506; 14 *Id*. 267; 24 *Id*. 356.

A debt may be paid or extinguished by a third person becoming responsible to the creditor with the concurrence of the debtor. 29 Cyc. 1136. The novation extinguishes the original debt with all rights and liens. 29 Cyc. 1137.

2. Weeks' mortgage to Million was never enforceable, as no breach was shown of its conditions entitling Million, Cooper and Bates to foreclose. It is shown that the alleged mortgagees have ever suffered any loss entitling them to foreclosure. The testimony shows that the sureties never paid one penny by reason of their suretyship, and appellees had no cause of action against appellant.

*E. G. Schoonover*, for appellees; *Jerry Mulloy*, of counsel.

There was no novation of the debt. The later note by Collier and others was merely a renewal of the former note of Weeks. Weeks had surrendered his right to the property to his mortgagees; they were in possession and the owner subject to appellant's right to redeem; the purchase price was unpaid, and they merely made new papers for the same debt. Collier obtained nothing by his purchase of the rights that appellees had, and conveyed nothing by his mortgage unless appellees had title and he acquired title from them. Appellant had no rights except the rights of a junior mortgagee, only the right to redeem from the prior mortgage to Million and Bates, to which the one he took was by its express terms subject. The theory of the chancellor was correct, and there is no error.

McCULLOCH, C. J.   In February, 1918, G. U. Weeks purchased a pair of mules from Cooper Bros. for the sum of $225 and executed his note to them for said sum with appellees Million, Bates and Ed Cooper as sureties. At the time of the execution of said note Weeks executed and delivered to Million a mortgage on said team of mules, containing the following recital:

"Whereas, the said party of the first part (the mortgagor) is indebted to the party of the second part (the mortgagee) in the sum of $225 in the following way: The said party of the second part has this day signed a note for the above-named sum, due November 15 next, and drawing 10 per cent interest per annum from date until paid, as surety to (for) the said party of the first part.   This is to secure the said party of the second part against any loss whatsoever by reason of having signed the same."   The mortgage provided that upon default in the payment of the indebtedness therein described the mortgagee could sell the mortgaged property at public sale, etc.

Weeks was a tenant on the farm of appellant, W. W. Rose, and he executed a mortgage to Rose to secure an indebtedness for future advances, and the mortgage contained the following recital, after the description of the mortgaged property: "George Million and D. Bates hold a first mortgage on mules."   Million filed his mortgage with the recorder of the county, but failed to make the proper indorsement showing that it was "to be filed but not recorded," and later appellant Rose also filed his mortgage for record.

Weeks failed to pay the note to Cooper Bros., and in November, 1918, proposed to Million and the other sureties on his note to turn over the mules and for them to make such disposition with them as they pleased.   The said sureties sold the mules to one Collier, who executed a new note to Cooper Bros., with Million, Bates, Ed Cooper and Ben Brown as sureties.   The mules were then turned over to Collier who executed a new mort-

gage to Million and the other sureties on his note to secure them against loss. Subsequently Rose took possession of the mules for the purpose of foreclosing his mortgage, and appellees Million, Ed Cooper, and Bates instituted this action in the chancery court against Weeks and Rose to foreclose the mortgage on the mules executed by Weeks.

It is alleged in the complaint that it was intended by the parties, in executing the mortgage, to incorporate the names of all the sureties so as to protect them from loss, and the court was asked to reform the mortgage so as to carry out the intention of the parties. The case was heard by the chancellor on documentary evidence and oral testimony, and the court rendered a decree in favor of appellees in accordance with the prayer of the complaint.

Million failed to properly record his mortgage, but the lien of that mortgage is superior to the subsequent mortgage executed by Weeks to appellant Rose, for the latter mortgage contained a recital which in effect made it subject to the former mortgage. *Clapp* v. *Halliday Bros.,* 48 Ark. 258.

The contention of counsel for appellant is that there was a complete novation of the debt—the substitution of one debtor (Collier) for Weeks, the original debtor. We do not think that the facts bring the case within that doctrine, for there was no agreement between the parties that there should be a substitution of debtors. The substance of the transaction was a surrender of the mortgaged property by Weeks in lieu of a foreclosure to Million and a resale of the property by Million to Collier. Million and his cosureties satisfied the original debt to Cooper Bros., by the execution of a new note, and Collier executed his note and mortgage to Million and the other sureties to protect them. Weeks did not make manual delivery of the mules directly to Million and the other sureties, but he delivered the mules to Collier at their direction. In order to constitute a novation, there must

have been an agreement between the parties for the assumption by Collier of the debt of Weeks to Million, and there was no evidence that this was done. *Brewer* v. *Winston,* 46 Ark. 163; *Elkins* v. *Henry Vogt Machine Co.,* 125 Ark. 6. On the contrary, Weeks was entirely ignored in the disposition of the property by Million and his cosureties to Collier, who did not assume the debt of Weeks, but entered into an original obligation for his own purchase of the property from Million.

Counsel is also mistaken in the contention that there was a discharge of the mortgage obligation of Weeks to Million and a satisfaction of the lien. The proof shows that there was no satisfaction entered of record and no surrender of the mortgage. Neither is there any evidence of an intention on the part of Million to discharge the mortgage lien which he held. On the contrary, the intention was to take the property with the consent of Weeks, the mortgagor, in lieu of a formal foreclosure, according to the terms of the instrument. There could be no cancellation of the lien under the circumstances where the actual intention was, as manifested by their conduct, to enforce the lien rather than to cancel it. The effect of the transaction was to foreclose the lien, and it was effectual for that purpose except as against appellant's right to redeem as a junior lienor.

Lastly, it is contended that the mortgage of Weeks was only to Million to secure him against any loss, and that the proof does not show that he sustained any loss or damage in the transaction as surety for Weeks. The court reformed the mortgage, and we think the evidence was sufficient to justify it, for it is undisputed that it was the intention of the parties to indemnify all the sureties. But a reformation of the mortgage was unnecessary in order to give protection to all the parties. The obligation of the sureties was joint as well as several, and the security taken by one of the sureties inured to the benefit of all of them. The sureties paid the note, as before stated, by executing a new note to Cooper Bros., with an

additional surety. This was a payment of the debt as between Million and the mortgagor, and it is the right of the former to foreclose the mortgage for the benefit of himself and his cosureties who joined in the payment. Equity looks to the substance rather than to the form of a transaction in order to determine the rights of the parties, and we are of the opinion that the chancery court reached the correct conclusion.

The decree is therefore affirmed.