BERTHOLA ALSTON *v.* M. H. BITELY JR. ET AL

5-5710                                                477 S.W. 2d 446

Opinion delivered March 13, 1972

*Brockman, Brockman & Gunti,* for appellant.

*Sam F. Cole,* for appellee Bilsky.

*Coleman, Gantt, Ramsay & Cox,* for appellee and cross-appellant Bitely.

JOHN A. FOGLEMAN, Justice. This appeal brings into question the correctness of the amount or portion of the debts of appellant and her former husband, I. T. Alston, to M. H. Bitely, Jr., and E. C. Hardin, Sr., for which she was held liable and lands assigned to her as dower held to be security. We find that there was error in determining these amounts which requires further proceedings in the chancery court.

Prior to 1960, M.H. Bitely, Sr., and E. C. Hardin, Sr., had both financed the Alston farming operations. A sizeable indebtedness to both had accumulated, and neither was willing to make additional loans. It was agreed that, if I. T. Alston could obtain a loan from which he would make certain payments to Bitely and Hardin, each of them would subordinate his liens on I. T. Alston's property to that lender. As a result of this agreement, Alston obtained a loan of $11,000 from Metropolitan Life Insurance Company, and gave a first mortgage on all his lands as security. Payments were made by Alston to Bitely and Hardin from the proceeds of this loan. About one month later—on February 6, 1960—I. T. and Berthola Alston joined in mortgages in favor of Bitely and Hardin to secure the balances due upon their respective debts. It was specified in these instruments that the Bitely mortgage was subject to that of Metropolitan and the Hardin mortgage subject to both.

The Bitely debt of $11,450 was evidenced by six promissory notes for $1,908.33 each bearing interest at 10 percent per annum from date until paid, executed by I. T. and Berthola Alston on February 10, 1960, the first of which was due on December 10, 1960, and another on the same date in each succeeding year. The Hardin debt of $9,683.38 was divided into seven notes of $1,383.34 with interest at 6 per cent per annum from date until

paid, each signed by I. T. and Berthola Alston with the same date of execution and annual maturity as the Bitely notes. Thereafter, appellee M. H. Bitely, Jr., succeeded to the ownership of the Bitely debt. In 1960 and during each subsequent year, Bitely Sr. or Jr. loaned I. T. Alston substantial sums for crop production. A separate account of these loans was kept by the Bitelys. Eash was secured by a mortgage on the crops and a mortgage on equipment, cattle and hogs owned by Alston. The proceeds of each annual crop were applied to the reduction of the debt for that year. Bitely thought that Mrs. Alston might have signed one or two of these crop mortgages. He did not remember her having signed any of the notes for these loans. She denied that she had signed any such note or mortgage. The crop proceeds were insufficient to pay these production loans in every year except 1962, when the excess was applied on the Metropolitan debt. Unpaid balances include the following:

1960 - $3,497.21; 1961 - $2,963.19; 1963 - $2,144.64

On February 23, 1964, the unpaid balance on the total Bitely debt amounted to $20,019.63. After the 1964 crop the total had increased to $25,929.48, and at the end of 1965 to $27,984.77. Bitely testified that the crop loans were additional advances secured by the mortgage which contained a statement that it was security for any indebtedness Bitely might hold against the mortgagors by reason of future advances.

In October, 1963, the Alstons separated, and Berthola was subsequently granted a divorce from I. T. The decree of divorce was entered in June, 1966, and a decreee setting aside 117 acres of the property of I. T. Alston to Berthola for life was entered on April 15, 1968. This tract was part of the mortgaged land. In 1966, Bitely knew of the Alston domestic difficulties when Alston requested a five-year extension of his indebtedness. An extension agreement was entered into between Alston and Bitely on April 2, 1966. The total indebtedness then amounted to $28,480.43. In the agreement, Alston acknowledged that this debt was secured by the 1960 real estate mort-

gage and stated that he was the owner of the land subject to his wife's dower.

The extension was further evidenced by a new note executed by I. T. Alston only. It provided for annual payments of $5,696.09 plus accrued interest at 6 per cent per annum on January 1 of each year beginning with 1967. The agreement contained this clause:

It is further understood and agreed that a new note in the amount of $28,480.43 is executed simultaneously herewith and shall be to the exclusion and not in addition to any note previously executed for said indebtedness or any part thereof.

Bitely did not surrender the original notes, however, and still held them when he filed this foreclosure suit on March 13, 1970. Appellant did not join in either the extension agreement or the new note. Before this agreement was made she had asked Bitely the amount of the total debt, and put him on notice that she would not be responsible for any later advances.

In 1967, Bitely loaned Alston $2,104.22 more than was repaid. After advancing money for payment of taxes on the land and the Metropolitan payments, the total debt amounted to $30,884.05 in 1968. Bitely testified that the accrued balance, including all interest charged, amounted to $38,399.78 on August 17, 1970. No payment was ever made on the 1960 notes to either Bitely or Hardin. Application of crop proceeds to the annual crop loans was in accord with I. T. Alston's instructions and the agreement between him and the Bitelys.

E. C. Hardin sought foreclosure of the lien of his mortgage. He contended that the crop loan advances made by Bitely did not take precedence over his third mortgage and that it was prior and paramount to the Bitely lien based on the extension agreement. I. T. Alston pleaded the statute of limitations against the Hardin notes maturing prior to 1965. Berthola Alston pleaded the statute as to the entire Hardin debt.

In addition to her general denial, appellant pleaded the statute of limitations as a complete defense to the Bitely foreclosure action, alleged that the extension agreement constituted a novation relieving her and the land assigned to her of the entire Bitely claim, and asserted that her rights were superior to those of any other party. She counterclaimed for award of the lands to her free and clear of the Bitely lien, or of the value of her life estate from the proceeds of any sale. She also cross-complained against I. T. Alston for indemnification of any loss she might sustain.

The decree setting aside the 117-acre tract to appellant prorated the indebtedness against this portion at 22.44 per cent of the total debt secured by mortgages. Mrs. Alston testified that she had paid her proportionate part of the taxes and Metropolitan payments coming due after she took charge of these lands and rented them.

Appellee Sidney Marvin Bilsky is the current owner of a judgment rendered against I. T. Alston in favor of Sam Levine on September 11, 1961. The lien of this judgment expired after three years [Ark. Stat Ann. § 29-131 (Repl. 1962)] but was revived on October 3, 1969. Bilsky, along with numerous other junior lieners and judgment creditors of I. T. Alston, was a defendant in the foreclosure action instituted by Bitely.

The opinion of the chancellor which was incorporated in the court's decree included the following findings pertinent to this appeal:

1. The extension agreement removed the bar of the statute of limitations as to I. T. Alston only and all of the Bitely notes except the last one are barred as to Berthola Alston, so that Bitely was entitled to personal judgment against both Alstons for the principal amount of the last note with accrued interest and against I. T. Alston for the balance of the indebtedness, or $35,491.45.

2. All of the Hardin debt was barred as to both Alstons except the notes due in 1965 and 1966, and

the bar was not removed by any testimony relating to the indebtedness given by the Alstons in the divorce action.

3. "Future advances" made by Bitely were optional, not obligatory.

4. The Hardin lien had priority over the additional advances made by Bitely, because the latter, knowing of the lien of the former, had a duty to notify Hardin if and when such advances were made, even though the Hardin mortgage was specifically made subject to the Bitely lien.

5. Bilsky took priority over the future advances for the same reason the Hardin lien did.

6. The priorities of the parties to this appeal were as follows:

| Claimant | Amount | Debtor |
|---|---|---|
| (1) Bitely | $1908.33 plus interest (last note) | Both Alstons |
| (2) Bitely | The first five notes plus interest | I. T. Alston |
| (3) Hardin | Two notes of $1,383.34 each plus interest | Both Alstons |
| (4) Bilsky Trust | $1,775.61 plus interest at 6 per cent since 8/1/69 | I. T. Alston |
| (5) Bitely | All indebtedness in excess of (1) and (2) above up to $38,399.78 | I. T. Alston |

7. The property of both Berthola and I. T. Alston should be sold by a commissioner and the proceeds applied first to expenses of sale, second to judgment creditors according to the priorities above listed, and third to the Alstons according to their

rights as determined in the divorce action with appellant's cash value computed according to Ark. Stat. Ann. § 50-701—706 (Supp. 1969).

8. Appellant should be allowed to pay her propotionate amount to the indebtedness as set out in the opinion, in which event the lands assigned to her would be withheld from sale.

After this opinion was filed the court was reminded by Hardin's attorney that there had been a waiver of the statute of limitations by appellant as to the Hardin debt. The chancellor then advised interested counsel that he would hold that only the first three Hardin notes, those barred at the time of the allotment of the 117 acres to appellant, were subject to this defense.

The decree, filed December 3, 1970, followed the chancellor's opinion for the most part. The following judgments were granted to the parties here, with priorities in the order listed:

| Creditor | Prin. & Int. | Daily Int. After 11/11/70 | Attorney Fee | Costs | Debtor |
|---|---|---|---|---|---|
| (1) Bitely | 1979.89 | .52 | 125.00 | 24.92 | I. T. Alston & Berthola Alston |
|  | 1979.89 | .52 | 125.00 | 24.92 | jointly & severally liable |
| (2) Bitely | 19,798.95 | 2.60 | 259.48 | · | I. T. Alston |
| (3) Hardin | a. 2225.34 | .46 | 130.50 |  | I. T. Alston & Berthola Alston |
|  | 2225.34 |  | 130.50 |  | jointly & severally liable |
|  | b. 4550.67 | .46 | 261.01 |  | Berthola Alston |
| (4) Bilsky | 1908.69 | .29 |  |  | I. T. Alston |
| (5) Bitely | 14,641.04 | (Int. after date of decree) | 184.60 |  | I. T. Alston |

One of the holdings contained in the decree was that, for purposes of payment, the joint and several judgments against the Alstons were to be divided equally. It would appear from this holding and the decree that Berthola Alston was held liable for one-half of the debt represented by the last Bitely note and the last two Hardin notes and for the full amount of the preceding two Hardin notes. Perhaps the court intended that appellant be enabled to have her lands withheld from sale by the payment of these amounts, but the portion of the decree giving directions for the sale of the lands appears to be inconsistent with this possibility.

The court barred all right, title and interest of both Alstons in all the real estate, directed the sale of all the mortgaged lands on January 15, 1971, to the highest bidder on a credit of three months, with approved security, but provided that in case a judgment creditor became the purchaser, he would be required to give his note only for the amount by which his bid exceeded the amount of his judgment and "according to its priority." The proceeds were to be applied first to costs, next to the payment of the judgments in favor of the respective parties, with any balance to be paid into the registry of the court pending further orders. The sale appears to have been mandatory for no conditions were stated under which the commissioner had any alternative to proceeding with it. No grace period for payment was allowed. No specific mention was made in these directions of the right of appellant to protect her life estate from sale. It appears that the only way she could have protected her position would have been by payment of all debts declared liens because lien creditors who might purchase were not required to pay any sums into court over and above the amount of the lien. There was not even a fund from which she could have been awarded the value of her life estate over and above the liens to which it was subject unless the bid exceeded all judgments rendered in the case. In effect, this made her lands subject to the lien for all additional advances by Bitely, even though the court properly held that she was not bound by the extension agreement.

After appellant gave notice of appeal, it appears that

sale was made for $34,162.69 to Bitely and Hardin as joint bidders, with Bitely having 246/342 interest and Hardin 96/342. They paid nothing into the court registry. The sale was confirmed over appellant's objection.

Appellant first asserts that the chancery court erroneously held her liable, jointly with I. T. Alston, for all of the Hardin debt instead of 22.44 per cent thereof. In this respect we think the chancellor erred. All except two of these notes were barred by the statute of limitations. As to these notes, the Alstons were jointly and severally liable to Hardin, regardless of any rights that appellant might have for indemnity against I. T. Alston, and all the lands are subject to the lien for this part of the debt. The error in the Hardin judgment against appellant arises from the court's misconstruction of a waiver of appellant's plea of the statute of limitations by lifting its bar to all except the first three notes.

Appellant's waiver was stated at the trial before any testimony was heard. Her attorney then stated that she was waiving the plea of the statute as to the percentage of the debt to Hardin allocated to her in the divorce case (22.44 per cent) as to all notes not barred by the statute of limitations on April 15, 1968. This would mean that her waiver made her liable to Hardin for 22.44 per cent of his notes which became due in 1963 and 1964 in addition to her liability on the notes later maturing, and her life estate is subject to a lien for all this liability. It is true that an answer by appellant's attorney to a single subsequent question by the court might be construed to be a complete waiver of the statute as to the entire obligation on the 1963 and 1964 notes, but, when this answer is considered in the entire exchange taking place between the attorneys and the court at the time it was given, no room for doubt is left as to the extent of the waiver. The chancellor must have fallen into error because of his failure to recall that there had been any waiver and his assumption, when reminded of it, that the waiver as to these notes was unlimited. As a result, appellant would have been required to pay an excessive amount on the Hardin debt in order to withhold her life estate from the sale, if indeed the decree permitted this at all.

Appellant's next point for reversal is based upon her contention that the extension agreement between I. T. Alston and Bitely effectively relieved her of any liability to Bitely except the amount due on the 1965 note, for which she and her former husband were jointly liable. This contention is consistent with the opinion rendered by the chandellor but does not seem consistent with the decree, which not only permitted Bitely to credit his judgment for the entire amount of the indebtedness due him from I. T. Alston upon his bid at a sale which included appellant's life estate, but also directed the commissioner to allocate the proceeds of sale to the judgment creditors in order of priority with only the excess over all liens to be held for later distribution. In effect, then, the decree made the Bitely debt for which appellant had no liability a lien on her life estate for all additional advances, as well as for that portion of the debt for which she had no liability because of the bar of the statute of limitations, which she had not waived.

Appellant next contends that the extension agreement constituted a novation and relieved her entirely of any obligation, not only for the additional advances but also for all the debt represented by all the notes. Although it appears that the statute of limitations had barred collection of any of the additional advances from appellant, along with the first five Bitely notes, we must consider the effect of this agreement because the last original note is not barred. This point then turns upon the effect of the extension agreement as a novation. If there was not a novation between I. T. Alston and Bitely, then there was none as to appellant, even if she could claim the benefit of a transaction to which she was not a party. The burden of establishing the novation releasing appellant was upon her. *Simmons National Bank* v. *Dalton,* 232 Ark. 359, 337 S.W. 2d 667; *International Minerals and Chemical Corp.* v. *Caplinger,* 241 Ark. 1055, 411 S.W. 2d 526. Appellant relies upon the language of the extension agreement earlier quoted for evidence that there was, as a matter of law, a novation. We do not agree.

In order to constitute a novation, there must be a clear and definite intention of the parties that such is the

purpose of the agreement. *Simmons National Bank* v. *Dalton,* supra; *Cockrill* v. *Johnson,* 28 Ark. 193; *Riddick* v. *White,* 194 Ark. 1010, 110 S.W. 2d 9. See also *John Wannamaker New York, Inc.* v. *Comfort,* 53 F. 2d 751 (5th Cir. 1931), 81 A.L.R. 133, cert. denied, 285 U.S. 560, 52 S. Ct. 457, 76 L. Ed. 948 (1931). There must be an intention on the part of the creditor to release the original debtor. *Brewer and Son* v. *Winston,* 46 Ark. 163; *Denman* v. *Bruce-Rogers Co.,* 190 Ark. 1098, 82 S.W. 2d 844. The question to be determined is whether by the execution and delivery of the extension agreement, the parties clearly intended to extinguish the old debt and rely entirely on the new, or to keep the old debt alive and merely accept the new as new security or evidence of the debt. See *Young* v. *Farmers Bank & Trust Co.,* 248 Ark. 613, 453 S.W. 2d 47. The existence of this intention, if it is not expressly declared, must be decided from all the circumstances in the case, including the subsequent conduct of the parties. *Home Life Ins. Co.* v. *Arnold,* 196 Ark. 1046, 120 S.W. 2d 1012; *Elkins* v. *Henry Vogt Mach. Co.,* 125 Ark. 6, 187 S. W. 663. See also, *John Wannamaker New York, Inc.,* supra. The issue is one of fact if there is any conflicting evidence or if the terms of the agreement are capable of more than one construction. *International Minerals and Chemical Corp.* v. *Caplinger,* supra. See *Denman* v. *Bruce-Rogers Co.,* supra; *Elkins* v. *Henry Vogt Mach. Co.,* supra. We have said that the intention must be so evident as to leave no room for doubt. *Cockrill* v. *Johnson,* supra; *Riddick* v. *White,* supra.

Where the intention to release an old obligation by acceptance of a new one is not expressly stated, one of the strongest indications of a contrary intention is the retention of the original evidence of debt by the creditor. *Brewer and Son* v. *Winston,* 46 Ark. 163. See also, *Farmers' National Bank* v. *Jones,* 234 Ky. 591, 28 S.W. 2d 787, 70 A.L.R. 335 (1930); *John Wannamaker New York Inc.,* v. *Comfort,* supra. In determining whether there has been a novation by substitution of debtors and a discharge of the lien of a mortgage given by the original debtor, significance has been accorded to the fact that the original debtor was ignored in the transaction. *Rose* v.

*Million,* 147 Ark. 530, 228 S.W. 376. It has been said that where a new note is not the obligation of all the parties liable upon the original note, there is no presumption that the former was given and accepted as a discharge of those liable on the latter. *Farmers' National Bank* v. *Jones,* supra.

The agreement was negotiated and executed without including or considering appellant as a party. The only reference to her in the instrument is I. T. Alston's representation that he owned the mortgaged lands subject to the dower interest of his wife. Bitely testified upon inquiry by the chancellor made for clarification of previous statements by the witness that he kept the original notes so they would still be in force. There was a provision that in case of conflict between the terms of the extension agreement and the original note and mortgage, the former should prevail, followed by another, in which Alston confirmed the original instruments as modified by the new agreement and acknowledged that Bitely, Jr., was the owner of the mortgage made to Bitely, Sr. The clause upon which appellant relies might be construed, in light of other terms of the agreement, to mean simply that the new note included, but was not cumulative to, the original notes. At least, the matter is not free from doubt.

Where there is a conflict in the evidence pertaining to the issue of novation, we will not reverse where we are unable to say that the decree of the chancery court was against the preponderance of the evidence. *Norden* v. *McAllister,* 207 Ark. 1101, 184 S.W. 2d 459. The chancellor's opinion and the court's decree constituted a finding of fact adverse to appellant on this issue We cannot say that the preponderance of the evidence does not support the finding.

Appellant argues that she should not be held liable for more than one-third of the notes not barred, relying on such cases as *Less* v. *Less,* 131 Ark. 232, 199 S.W. 85, and *Salinger* v. *Black,* 68 Ark. 449, 60 S.W. 229. In neither of those cases does it appear that the widow was a comaker and jointly and severally liable, as was ap-

pellant, so there was no error in rejecting the arguement. In those cases it was recognized that the lien of the mortgagee was not affected by the assignment of dower or the apportionment of the indebtedness. Of course, Bitely's lien for any advances made for the payment of taxes and for payments on the Metropolitan mortgage debt, to the extent that appellant did not contribute her pro rata share, extends to her life estate as well as to the reaminder and all the other lands. *Tolson* v. *Pyramid Life Ins. Co.*, 221 Ark. 492, 254 S.W. 2d 53.

On cross-appeal, Bitely contends that the chancellor should have held appellant personally liable for all additional advances made prior to the separation of the parties. Inasmuch as we agree with the chancellor and appellant that the statute of limitations had run in her favor, we must affirm on cross-appeal insofar as this point is concerned.

We find merit in Bitely's contention, however, that there was error in the holding that the Levine judgment held by Bilsky was prior to Bitely's lien for the additional advances. It was conceded at the commencement of the trial that the lien of this judgment dates from October 3, 1969. Even though the additional advances made by Bitely prior to this date were optional rather than obligatory, the Bitely lien is clearly superior to that of the judgment. Liens acquired before the revivor of the judgment became superior to it. See *Drumm Commission Co.* v. *Simms,* 89 Ark. 165, 116 S.W. 183.

A judgment lien is subject to all other existing liens which are valid as to the landowner, because the judgement lien does not attach to the land but only to the judgment debtor's interest therein. *Carroll* v. *Evans,* 190 Ark. 511, 79 S.W. 2d 425. Judgment creditors are not innocent purchasers and the judgment lien is subject to every equity which existed against the land at the time it comes into existence. *Fears* v. *Futrell,* 216 Ark. 122, 224 S.W. 2d 362; *McGuigan* v. *Rix,* 140 Ark. 418, 215 S.W. 611; *Carroll* v. *Evans,* supra. In *Pulaski Federal Savings & Loan Assn.* v. *Carrigan,* 243 Ark. 317, 419 S.W. 2d 813, this court repeated an earlier holding that if the lan-

downer's interest is subject to any infirmity or condition by reason of which it is eliminated or ceases to exist, the lien ceases with it. The existing equities need not be of record, and lack of notice to the judgment creditor is immaterial.[1] See *Snow Bros. Hardware Co.* v. *Ellis,* 180 Ark. 238, 21 S.W. 2d 162; *McGuigan* v. *Rix,* supra; *Carroll* v. *Evans,* supra. Cf. *Williams-Echols Dry Goods Co.* v. *Bloyd,* 169 Ark. 529, 276 S.W. 1. In view of the language of the mortgage and of the extension agreement of April 2, 1966, it cannot seriously be argued that the Bitely mortgage was not intended to secure the additional advances, that it was not a valid lien insofar as I. T. Alston and Bitely are concerned, or that the mortgage did not stand as security for advances made up to the date of the revivor of the judgment lien. See *Curry* v. *Commercial Loan & Trust Company,* 241 Ark. 419, 407 S.W. 2d 942. Furthermore, when we consider the language of the Bitely mortgage, the circumstances attending its execution, the course of dealings between the parties before and after its execution, and the purposes for which the advances were made, it is clear that this mortgage was security for the additional advances made in this case. *State Nat. Bk.* v. *Temple Cotton Oil Co.,* 185 Ark. 1011, 50 S.W. 2d 980.

It appears from the record, however, that Bitely may have made advances to Alston after the revivor of the Bilsky judgment lien. This presents a more difficult problem, and we do not seem to have any decisions controlling this particular issue. We have said, however, that where the making of future advances is entirely optional, with the mortgagee, those made prior to the attaching of a junior lien are secured by a recorded mortgage securing them and that the general rule is that the mortgage is an effective lien as to a subsequent lien or encumbrance of which the mortgagee does not have actual notice. *Ashdown Hardware Co.* v. *Hughes,* 223 Ark. 541, 267 S.W. 2d 294. We have also held that when advances are optional, the mortgagee cannot, after notice that a subsequent lien has attached, deplete the value of the equity to the disparagement of its lienors by advances, which,

---

[1] Of course, notice to a purchaser at an execution sale might be necessary. See *Apperson & Co.* v. *Burgett,* 33 Ark. 328.

if refused, would not have been in force. *Ashdown Hardware Co.* v. *Hughes,* supra; *Superior Lumber Co.* v. *National Bank of Commerce,* 176 Ark. 300, 2 S.W. 2d 1093. In both of the cited cases another type statutory lien, i.e., a materialman's lien, was involved as the junior encumbrance. In the earlier case, the mortgagee was denied priority as to moneys advanced after it had notice of the lien.

There is a divergence of authority on the particular question involved, but the majority rule is supported by the more recent and better-reasoned cases. It is that the lien of a prior recorded mortgage securing optional future advances is superior to an encumbrance intervening between the giving of the mortgage and the making of the advance, if the mortgagee does not have knowledge or actual notice, as distinguished from mere record notice, of the intervening encumbrance. Annot., 138 A.L.R. 566, 579 (1942). This rule is consistent with our statements in the cases involving materialmen's liens, and at least one of the cases cited by us in *Superior Lumber Co.* v. *National Bank of Commerce,* supra, is cited by the annotator as supporting the majority rule. There is nothing in this record to indicate that Bitely had actual notice of the Bilsky judgment prior to his filing of the foreclosure suit, so his mortgage lien takes priority over the Bilsky judgment for the entire Alston debt.

We have reached the conclusion that, because of the errors indicated, the cause must be remanded for further proceedings. The personal judgments against Berthola on both the Bitely and Hardin debts are excessive, and the Bilsky judgment should not have any priority over her life estate since it was not a lien at the time the property division was made in the divorce proceeding. Perhaps the decree could be modified here to restate the amount of the judgment against Berthola Alston and the priorities of the judgment liens; however, doing so would ignore any right appellant might have had to protect her life estate from sale. We have concluded, however, that she was not entitled to protect her estate from sale by paying merely the amount of the judgments against her. She executed a relinquishment of dower and homestead in both the

Bitely and Hardin mortgages. To the extent of the debt secured by the mortgages, her dower interest was relinquished and extinguished, insofar as the mortgagees were concerned. Appellant took the lands assigned to her subject to the lien of the mortgages, and the mortgagees had the right to have all the lands sold for the satisfaction of the debts secured. *Crosser* v. *Crosser,* 121 Ark. 64, 180 S.W. 337; *Hewitt* v. *Cox,* 55 Ark. 225, 15 S.W. 1026, 17 S.W. 873. This does not mean that appellant's life estate stood as security for the entire debt of I. T. Alston under the circumstances of this case.

A relinquishment of dower endures for the life of the principal conveyance and no longer, and if the conveyance is satisfied, becomes inoperative or is extinguished by operation of law, the relinquishment of dower is no longer effective. *Gainey* v. *Anderson,* 87 S.C. 47, 68 S.E. 888 (1910); *In re Lingafelter,* 181 F. 24 (6th Cir. 1910), 32 L. R. A. (n.s.) 103. This does not mean, however, that Berthola Alston's life estate is subject only to the lien of that part of the Bitely debt which had not been barred by the statute of limitations as to her. The Bitely mortgage was prevented from becoming inoperative by the extension agreement executed by I. T. Alston. It has been established by a respectable authority that the life of a mortgage may be extended before it has been extinguished by the operation of the statute of limitations by the act of a husband, who was a mortgagee, suspending the running of the statute, so that the relinquishment of dower remains effective. *Tracy Loan & Trust Co.* v. *Luke,* 72 Utah 231, 269 P. 780 (1928); 2 Jones on Mortgages, Eighth Edition (1928), 1032, et seq., § 1536. In spite of the fact that I. T. Alston's extension agreement did not remove the bar of the statute as to Berthola, it did prevent the relinquishment of dower from becoming ineffective, so that the lien of the mortgage remained operative. That lien secured all of the Bitely notes and all future advances to the date of the notice given Bitely by Berthola Alston that she would not be further responsible.

The actual property division between I. T. and Berthola preceded the filing of the foreclosure suit, but this did not have the effect of limiting the right of either mort-

gagee to a sale of the estate of both parties in the property to satisfy his lien, if that is necessary to satisfy debts which are a lien on appellant's life estate. The purpose of division of property in divorce cases under Ark. Stat. Ann. § 34-1214 (Repl. 1962) is to end all controversies as to dower. *Beene* v. *Beene,* 64 Ark. 518, 43 S.W. 968. We have always considered the statutory property division as dower. See *Glover* v. *Glover,* 153 Ark. 167, 240 S.W. 716; *Biddle* v. *Biddle,* 206 Ark. 623, 177 S.W. 2d 32; *Bradshaw* v. *Atkins,* 216 Ark. 757, 227 S.W. 2d 441; *Brimson* v. *Brimson,* 227 Ark. 1045, 304 S.W. 2d 934; *Narisi* v. *Narisi,* 233 Ark. 525, 345 S.W. 2d 620. The life estate of appellant is, in effect, assigned dower.

We are unable to determine the actual amount of the advances made by Bitely over and above the debt evidenced by the six notes prior to the notice that appellant would not be further responsible, because the exact date of that notice is not shown. We only know that it was at some time prior to the execution of the extension agreement. The plea of the statute of limitations by appellant was an affirmative defense since the bar of the statute does not appear upon the face of the pleadings. The burden of proving an affirmative defense lies upon the defendant asserting it. Ark. Stat. Ann. § 28-101 (Repl. 1962). See also *Kempner* v. *Stephens,* 186 Ark. 877, 56 S.W. 2d 580; *Patton* v. *Ashley,* 8 Ark. 290. Whenever the bar of the statute of limitations does not appear from the pleadings or evidence on behalf of the plaintiff, the burden of proof is upon the defendant who pleaded the statute as a defense to establish its application to bring him within its terms. *McCrite* v. *Hendrix College,* 198 Ark. 1149, 133 S.W. 2d 31; *Smith* v. *Milam,* 195 Ark. 157, 110 S.W. 2d 1062; *Yaffe Iron & Metal Co.* v. *Pulaski County,* 188 Ark. 808, 67 S.W. 2d 1017; *St. Louis I. M. & S. Ry. Co.* v. *Berry,* 86 Ark. 309, 110 S.W. 1049. It follows, therefore, that when, as here, a part of an indebtedness is barred by the statute of limitations, and the remainder is not, the burden of showing the specific amount barred is upon the party pleading the statute. *Sanders* v. *Merchants State Bank of Centralia,* 349 Ill. 547, 182 N.E. 897 (1932); *Golden* v. *Lerch Bros.,* 203 Minn. 211, 281 N.W. 249 (1938); *Buck* v. *Newberry,* 55 W. Va. 681, 47 S.E. 889 (1904). See also

Annot. 8 Ann. Cas. 340, 341; 54 C.J.S. 523, Limitation of Actions, § 386.

We are unable to determine the exact portion of the existing debt barred by the statute of limitations in this case. At the time of the execution of the extension agreement, the first Bitely note was already barred, so the extension agreement was ineffective to prolong the lien to secure this note as to appellant. It also appears that additional advances were evidenced by annual notes, which would have been due at the end of the respective crop seasons. The 1960 advances on which there was a principal balance of $3,497.21 would have been barred before the execution of the extension agreement. The balance stated in the extension agreement obviously included these items which had been barred, along with accrued interest thereon. With the exception of these items, in the absence of other evidence, we can only take the balance stated in the extension agreement as being the amount of the unbarred debt which would have been a lien on appellant's life estate as well as upon I. T. Alston's interest in the land. Of course, after she gave notice that she would not be further responsible, the lien on her interest would not secure any advances made after that date, except for payments on the first mortgage and for taxes to the extent appellant did not contribute her pro rata part.

The priorities established by the chancellor then should be revised insofar as the lien on the entire estate in the lands is concerned as follows:

## PRIORITIES AS TO WHOLE ESTATE

| Claimant | | Debtor |
| --- | --- | --- |
| (1) Bitely | $1,908.33 plus interest (last note). | Both Alstons |
| (2) Bitely | The 2nd, 3rd, 4th and 5th notes and additional advances for 1961, 1962, 1963, 1964 and 1965 plus any | I. T. Alston |

thereafter made for tax and first mortgage payments to which Berthola Alston did not contribute her pro rata part, plus interest[1]

(3) Hardin     2 notes of $1,383.34 each, plus interest.[1]     Both Alstons

Even though the lien of the mortgage extended to the entire estate, appellant should have been permitted, in equity, to have the husband's interest remaining after the assignment of dower to her first exposed to sale. A court of equity should direct that a sale be made in such a manner as to protect the interests of the holders of rights acquired in property subsequent to the execution of the mortgage, and, in order to do so, will order the portion not conveyed by a mortgagor to be sold first and other property sold only in the event that the property not conveyed fails to bring enough to satisfy the decree. Hughes, Arkansas Mortgages (1930), p. 348, § 411. This principle has been applied in favor of minors claiming a homestead interest in a portion of lands mortgaged by their mother by requiring that the remaining lands be first sold before resort was had to the lands claimed as homestead. *Littell* v. *Jones*, 56 Ark. 139, 19 S.W. 497. It has also been applied to protect the homestead of the mortgagor. *McMillan* v. *Palmer*, 198 Ark. 805, 131 S.W. 2d 943. It has been applied at the instance of a widow to protect her homestead rights in her husband's land. *Bank of Hoxie* v. *Graham*, 184 Ark. 1065, 44 S.W. 2d 1099. We have said that the law is so solicitous of the homestead right that a secured creditor will be required to exhaust his nonexempt security first, even when a loss to common creditors would result. *Sims* v. *McFadden*, 217 Ark. 810,

---

[1]Item (2) would actually be the amount of debt recognized in the extension agreement ($28,480.43) less Item (1) and less the 1960 additional advances ($3,497.21) with interest at 10 per cent from January 1, 1961, to April 2, 1966, the date of the extension agreement. This item would have amounted on April 2, 1966, to $20,068.39, and would bear interest thereafter. This calculation is subject to adjustment to add first mortgage and tax payments made by Bitely to which appellant did not contribute pro rata.

233 S.W. 2d 375. Appellant should be in no worse position with reference to her assigned dower. Homesteads are protected because of our policy to protect the family home. *Bank of Hoxie* v. *Graham,* supra. The law has always been solicitous of a widow's dower. *Rush* v. *Smith,* 239 Ark. 706, 874, 394 S.W. 2d 613. The wife's dower right may be protected by ordering that the husband's interest be first sold, or her dower right excepted and reserved from sale. 3 Jones on Mortgages, Eighth Edition (1928) 558, § 2085. Some recognition was given to this right in the chancellor's findings, in stating that her interest should be withheld from sale upon her making certain payments. This privilege was not accorded her in the decree and subsequent proceedings.

Other alleged errors are either moot by reason of our disposition of the issues heretofore treated or inlikely to arise in further proceedings. Remand will be necessary because appellant was prevented from having her life estate withheld from sale without the payment of an excessive amount due to the errors indicated. Her husband's interest, i.e., the entire tract should be first offered for sale, subject to appellant's life estate in 117 acres. The proceeds of this sale should be applied first to those portions of the debts to Bitely and Hardin for which I. T. Alston alone is liable and then to the joint liabilities of I. T. and Berthola Alston. If any balance then remains it shall be held for later application. Berthola Alston's life estate shall then be subjected to sale after she has been afforded a reasonable time within which to pay all remaining debt which constitutes a lien thereon. The proceeds of this sale shall be first applied to the joint liabilities of I. T. and Berthola Alston remaining unpaid after application of the proceeds of the first sale, then to the payment of any remaining indebtedness of I. T. Alston which is a lien on appellant's dower and then to that part of the Hardin debt for which she alone is liable, i.e., 22.44 per cent of the notes maturing in 1963 and 1964 with interest. Any surplus that may then remain from this sale shall be paid to Berthola Alston. After the payment of the joint indebtedness of the parties, any surplus from the sale of I. T. Alston's interest shall be applied to the pay-

ment of the Bilsky judgment and any balance then remaining to I. T. Alston.

. If Bitely should bid at the first sale, he may credit upon his bid only the amount of the debts due him by I. T. Alston, and shall be required to give security for the payment of his bid, if successful, in excess of those amounts. If Bitely should bid at the second sale, he shall be entitled to credit for any remaining balance due him which constitutes a lien on appellant's life estate and shall be required to give security only for the excess of his bid over that amount, if he shall be the highest bidder. If Hardin or Bilsky should bid at either sale, he shall be required to give security for his entire bid.

The decree is reversed and the cause remanded for further proceedings consistent with this opinion.