In re **CONTRACTOR'S GLASS CO., INC., Debtor.**

**J.J. FAULKNER, Plaintiff,**

v.

**CONTRACTOR'S GLASS CO., INC., Debtor; City National Bank of Fort Smith; A. Ross Brown; Ruth Brown; Michael Ross Brown and Elaine Shaw, Defendants.**

**Bankruptcy No. FS 89–12444M. Adv. No. 91–2503.**

United States Bankruptcy Court, W.D. Arkansas, Fort Smith Division.

Nov. 18, 1992.

Ronald L. Boyer, Rogers, AR, for plaintiff.

John T. Lee, Trustee, Siloam Springs, AR.

Michael K. Redd, Fort Smith, AR, for City National Bank.

Ben T. Barry, Fort Smith, AR, for the debtor.

### MEMORANDUM OPINION

JAMES G. MIXON, Chief Judge.

On September 15, 1989, Contractor's Glass Co., Inc. (debtor) filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code. On February 19, 1991, J.J. Faulkner (Faulkner) brought this adversary proceeding for determination of the priority of security interests claimed by himself and City National Bank of Fort Smith (CNB) in personal property owned by the debtor.

The matter before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) (1988). The Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### I.

On April 30, 1987, the debtor was indebted to CNB in the principal sum of $185,-000.00 as evidenced by a promissory note which was executed on the same date. To secure the note, the debtor executed and delivered to CNB a corporate real estate mortgage and a security agreement. The security agreement granted CNB a security interest in all of the debtor's inventory, accounts receivable, equipment, furniture and fixtures then owned or thereafter acquired by the debtor. The security agreement also contained a future advances clause to secure any future loans made to the debtor by CNB. CNB filed properly executed financing statements with the Sebastian County Circuit Clerk on May 5, 1987, and with the Secretary of State on May 6, 1987, thereby perfecting its security interest as of May 6, 1987.

Also, on April 30, 1987, the debtor was indebted to Faulkner in the principal sum of $50,000.00 as evidenced by a promissory note executed on the same date. The debtor secured the note by granting a security interest to Faulkner in the same personal property that was securing CNB's indebtedness. The security agreement acknowledged that Faulkner's security interest was second and inferior to the bank's security interest. Faulkner filed his security agreement[1] with the Sebastian County Circuit Clerk on May 1, 1987, and with the Secretary of State on May 15, 1987, thereby perfecting his security interest as of May 15, 1987.

On June 23, 1988, the debtor borrowed an additional sum of $33,700.00 from CNB as evidenced by a promissory note of that same date. To secure the note, the debtor executed an additional security agreement granting CNB a security interest in the debtor's inventory, equipment, accounts receivable, furniture, and fixtures and assigned Invoice No. 28491 to CNB. CNB did not file a new financing statement in regard to the new security agreement.

After the debtor filed bankruptcy, the trustee liquidated the debtor's real and personal property. The debtor's real property was sold on January 26, 1990, for the net sum of $160,053.10. The debtor's personal property was sold on January 27, 1990, for the net sum of $15,659.81. The trustee determined that CNB had a first priority lien in the real and personal property and disbursed the sale proceeds to CNB accordingly.

At the time of the trustee's notice of sale, the debtor owed CNB $158,527.78 on the balance of the $185,000.00 promissory note, accruing interest at $42.37 per day. CNB applied the real estate proceeds to the $185,000.00 note, which satisfied the note in full. CNB applied the personal property proceeds to the $33,700.00 note, leaving an unpaid balance of approximately $18,-040.00, plus interest.

1. A copy of the security agreement is sufficient as a financing statement if it contains the same information as a financing statement and is signed by the debtor. Ark.Code Ann. § 4–9–402(1) (Michie 1991).

Faulkner does not dispute that CNB is entitled to the proceeds from the sale of the real property; however, he argues that since the debtor's initial indebtedness of $185,000.00 to CNB has been satisfied in full, his (Faulkner's) security interest in the personal property is superior to CNB's security interest.

CNB contends that although the $185,000.00 indebtedness of the first promissory note was paid in full, the debtor remained indebted to CNB by virtue of the $33,700.00 advance. CNB contends that its security interest remains perfected by virtue of its financing statements filed May 5 and 6, 1987, notwithstanding the fact that the $33,700.00 was advanced on June 23, 1988.

## II.

Faulkner argues that under real estate law, a prior recorded mortgage securing optional future advances is superior to an intervening encumbrance only if the first mortgagee does not have actual notice of the intervening lien. He cites the following cases in support of his argument: *Dempsey v. McGowan*, 291 Ark. 147, 722 S.W.2d 848 (1987); *Union National Bank v. First State Bank and Trust Co.*, 16 Ark.App. 116, 697 S.W.2d 940 (1985); and *Alston v. Bitely*, 252 Ark. 79, 477 S.W.2d 446 (1972). Faulkner contends that the bank had notice of his intervening lien on the debtor's personal property, therefore the bank's second security interest is inferior to Faulkner's lien.

■ Faulkner's reliance upon *Dempsey, Union National,* and *Alston* is misplaced. *Union National* pertains to priorities of real estate mortgages. Faulkner concedes that the priorities of the real estate mortgages are not in issue. Faulkner contends, however, that *Dempsey* and *Alston* involve priorities of materialmen's liens, and he is apparently analogizing a materialmen's lien with a security interest in personal property. A security interest in personal property and a materialmen's lien are not analogous because they are governed by different law. A security interest in personal property attaches to per-

sonal property. Ark.Code Ann. § 4-9-101, *et seq.* (Michie 1991). Transactions intending to create a security interest in personal property are governed by the Uniform Commercial Code (UCC), specifically Ark. Code Ann. § 4-9-102 (Michie 1991). A materialmen's lien, by statute, attaches solely to the real estate it improves. Ark.Code Ann. § 18-44-101 (Michie 1987). Materialmen's liens are excluded from the UCC. Ark.Code Ann. § 4-9-104(c) (Michie 1991). Therefore, the cases relied upon by Faulkner involving priorities of real estate mortgages and materialmen's liens do not apply to the priorities of security interests in personal property.

■ Under Ark.Code Ann. § 4-9-312(5)(a) (Michie 1991) "conflicting security interest [in the same collateral] rank according to priority of filing or perfection." *See Affiliated Food Stores, Inc. v. Farmers & Merchants Bank*, 300 Ark. 450, 780 S.W.2d 20 (1989). Ark.Code Ann. § 4-9-204 (Michie 1991) specifically recognizes the validity of future advances provisions in a security agreement and the date of perfection relates back to the original filing date. *In re Howell Enterprises, Inc.*, 105 B.R. 494 (Bankr.E.D.Ark.1989).

The Arkansas Supreme Court addressed issues similar to those involved here in *Associated Business Inv. Corp. v. First Nat'l Bank*, 264 Ark. 611, 573 S.W.2d 328 (1978). There, the court held that the bank retained first priority in the debtor's personal property due to the future advances clause. The court stated:

> The simple fact that the first secured note had been paid is not sufficient evidence to hold that the security interest claimed must fail. This is especially true in view of the fact that a future advances clause was contained in the [security agreement], evidence was adduced that [debtor] was never out of debt to the bank and the bank made subsequent loans to [debtor].

*Id.* 573 S.W.2d at 330.

■ The evidence reflects that the original agreement between CNB and the debtor contains a future advances clause. CNB

took the requisite steps to perfect its security interest. CNB's security interest was perfected before Faulkner's security interest was perfected. Therefore, CNB's security interest is superior to Faulkner's security interest. Ark.Code Ann. § 4–9–312(5) (Michie 1991). Although the initial note was paid in full by the trustee, the debtor was still indebted to CNB by virtue of the $33,700.00 advance. The financing statements filed May 5 and 6, 1987, perfected CNB's lien to secure the future advance of $33,700.00. Therefore, CNB has first priority to the net proceeds from the sale of the debtor's personal property.

IT IS SO ORDERED.