Home Life Insurance Company *v.* Arnold.

4-5178                    120 S. W. 2d 1012.

Opinion delivered November 7, 1938.

*A. D. DuLaney,* for appellant.
*Leffel Gentry* and *J. C. Stevens,* for appellee.

BAKER, J. We have had difficulty in choosing a method of presentation of the questions that have arisen on this appeal. On acount of the voluminous record, if the salient parts thereof were copied and set forth so as to present in that manner the issues that have arisen the discussion would be almost without limit. We cannot think there would be any corresponding benefit that might arise from such a presentation.

We will attempt a statement instead of the facts showing the vital issues and give our conclusions thereon.

Mrs. Kate Arnold was the beneficiary in a policy of life insurance issued by the Home Life Insurance Company, which will hereinafter be referred to for convenience as the appellant, or Home Life, and by this policy the life of J. D. Arnold was insured. J. D. Arnold was a stockholder, and he was a director and vice-president of the Home Life Insurance Company. The policy sued on herein was dated October 17, 1922. Mr. Arnold paid his premiums to that company to July 17, 1931. At that time the Home Life became insolvent, or, at least, its assets were impaired to the extent that the insurance commissioner being cognizant of the facts and conditions prevailing, by official order announced: "To protect the interests of the policyholders and the business and assets of the Company, reinsurance should be effected, if possible. Therefore, the Commissioner finds it advisable that reinsurance proposals be received as set out in a separate order this day made."

The Home Life Insurance Company, its officers in charge thereof, and its agents having control of its business acceded to the demand made by the insurance commissioner and in accordance with that order and pursuant thereto entered into a contract with the Central State Life Insurance Company of Missouri, wherein un-

der the terms, conditions and limitations therein set out, policies in good standing in the Home Life were reinsured and assumed in accordance with the provisions of the contract. That contract was dated April 3, 1931. Among other things specifically set out, was the fact that the resources of the Home Life were so impaired that these policies could be reinsured only upon condition that there should be a lien against each one of the said policies amounting to 50 per cent. of all such reserves, and it was provided that this charge or lien should bear interest at 6 per cent. compounded annually. Since we are somewhat impressed with the statement and argument to the effect that, although so contracted and described as a lien against said policies, it was not in fact or in law such. We think, however, if it be conceded that this charge was not in fact a true lien, it must then be regarded as a fixed charge running with the policy, incapable of being detached or severed therefrom, except by payment or upon the conditions stated in the contract.

The view that we have of this controversy is such that we think it important to call attention to the fact that although the contract may have been required, as it was, by order of the insurance commissioner, the contract agreements and provisions therein were made and entered into by the two insurance companies, the Home Life and the Central States, acting as corporations must, through their legally and duly constituted officers as the agents thereof without duress. It is expressly declared on the part of the appellant that as a matter of law the officers of the Home Life Insurance Company made and entered into this contract on behalf of the company and that J. D. Arnold, the insured, was a stockholder, a director in this insurance company as well as one of its vice-presidents. In the absence of a positive or affirmative showing to the contrary, we think it must be conclusive that he acted as such director.

Without reciting, or selecting from this record the various facts that led to the announcement of the conclusions we are about to set forth, we think it undisputed that Mr. Arnold was an experienced business man, having knowledge of most, if not all the intricacies and details

of life insurance companies, their methods of operation and other matters important to be known and understood by one who is presumed to act as a director for such a company in its management and operation. In addition, however, to whatever other qualifications he posessed, he was a policyholder in the company, his life being insured in the sum of $6,000 by it. So aside from the presumption of his qualifications and of his ability and his obligations in rendering to that company the service he owed to it as a matter of law, he had an additional personal interest of preserving the $6,000 insurance that he had carried by payment of premiums for a number of years.

By this contract entered into between the Home Life and the Central States, the Home Life transferred, without reservation, all its assets to the Central States, and all that could have been regarded as reserved, by effect of law, or as retained by the Home Life for the benefit of any dissenting policyholder or transfers affected by a trust, is such portion of the reserve as such dissenting policyholder may have been entitled to receive.

The proof in this case, aside from the contract, which states that there was a 50 per cent. impairment, indicates that there was an even greater loss. The exact amount is not definitely stated, so if there were, at the time, any dissenting policyholder, his claim and his rights were definitely fixed, not alone by the contract which provided for the 50 per cent. charge, or lien, but by the facts, which being undisputed showed that there was in fact the 50 per cent. impairment or loss. It is unnecessary, however, to discuss that phase of the case further, except to indicate, as we think that it must be recognized as a matter of law, if not conclusively shown that Mr. Arnold was apprised of this fact as a policyholder at the time he and other officers executed the contract, and also immediately thereafter, as the record discloses, he was furnished with a copy of this contract which was presented and offered in evidence as coming from the hands of the appellee at the time of the trial.

We think the only question that need be determined here is one of law and that all facts in regard thereto must be deemed as undisputed under and by terms of this

agreement and contract made by the Home Life and Central States and the conduct of Mr. Arnold, as one of those aiding in making this contract for his company, and his conduct thereafter as a policyholder. The contract for reinsurance was a novation by which the Central States became liable as a substituted insurer, and the Home Life was released. Such is the position of appellant. If that be true, then the judgment rendered in this case is erroneous and must be set aside and the action be dismissed.

We have already stated the material and salient facts and it may be stated definitely and positively that there is no evidence of any kind that Mr. Arnold himself, by any act or word, at any time, attempted to repudiate or avoid in any particular the full force and effect of the contract he had helped make. We know what his interest was. We take cognizance of his ability to act as director to discharge the full responsibilities of such officer for the insurance company. We do this in spite of the fact that it is argued by the appellee that these officers acted as automatons or "rubber stamps". The law will not permit conclusions of that kind to prevail. In fact, such a presumption is in violation of public policy. There was a time when directors of corporations became liable for failing to make certain reports. They have always been liable for such willfully negligent conduct in the management of the corporation's business as to cause loss of the property, and could always be made to account for such losses occasioned by their neglect to perform the duties and obligations as directors when they assumed to act as such. 13 Am. Jur. 939, § 985, *et seq.*

But there is one other stronger and greater impelling motive that must have actuated Mr. Arnold, to some extent, in the matter of his conduct, not only in the making of this contract for reinsurance, but an effort to preserve his individual rights and interest by reason of the policy issued to him. He had a stockholder's investment. The very concept of property implies a desire ordinarily not to waste, but to preserve. So when Mr Arnold helped to transfer all assets of the Home Life

to the Central States his desire and anxiety for the preservation of what was his, doubtless, followed the transfer. There was left of the Home Life the empty shell, a name without substance. After this transfer and this charge or lien had been made and fixed against all such policies, Mr. Arnold paid four quarterly premiums to the Central States and, thereafter, attempted to deal or negotiate with the company for additional time, offering his unsecured personal notes for recognized premium charges against his policy, due and owing the Central States. But is is argued by the appellee that in accordance with the contract the Central States was the only party to receive the premiums, and that, necessarily, Mr. Arnold must have paid whatever premiums were due by reason of the contract to the party designated by the Home Life as a proper party to receive them. We suggest that a mere presentation of that argument implies a desire and urge, on the part of the appellee, to be bound only by the terms of the contract deemed favorable to her interest. We suggest now that she may not accept that part of the contract which she deems to be of advantage to her and repudiate all other portions which may carry burdens or obligations inseparably linked to the benefits. Mr. Arnold sent his check to the company and asked that he be permitted to execute notes. He was notified that the lien or charge against his policy was such that he had no cash value upon which he could rely for its maintenance and that his premiums must be paid in accordance with his original contract for the payment of the premiums as a condition of continuing his insurance, or to prevent the threatened lapse. Mr. Arnold, without complaint, without protesting this decision of the Central States, requested the return of his check for $42.15, which he had sent some weeks before and agreed that his policy should lapse on account of his inability to pay the premium.

We have already shown that Mr. Arnold understood the nature and condition of insurance, the relation of policyholder and insurer. As a director, he necessarily understood these things. As a business man, he knew his

insurance could not go on unless he paid the premium. As one having the ability to contract, he understood the mutual obligations of an insurance contract, wherein the insured must pay his premiums. There was an express declaration of consent that this policy sued upon should be canceled and, although Mr. Arnold lived some weeks thereafter, there is no word of evidence anywhere that he attempted himself to repudiate this fairly and clearly determined course of action: We think it apparent that he made it clear that he was unable financially to meet his obligations, because he attempted to deal with the company to reduce his policy to $2,500 and for that amount of insurance, free from the lien charge, leaving him only the obligation to pay the premium for that amount, but it seems that under the setup or agreement, even that portion of his insurance, as it was explained to him by the officers of the Central States, must be taken and accepted by him, subject to the same charge or lien that was imposed upon all other policies assumed under this contract. Doubtless he recognized the fairness of that conclusion. He did not object. So the undisputed facts presented here are to the effect that Mr. Arnold had $6,000 insurance. There was a loan charge against it of $1,209.78. There was the lien charge against it of $675.26. The total cash value upon this policy was $1,-402.50. The loan and lien charges exceeded the cash or loan value by $483.54. The simplest form of mathematics we know, addition and substraction, presents the undisputed and unmistakable fact that there was no money at that time with which this insurance could be carried, even for a single day, except upon payment of the premiums in cash, according to the plain wording of the policy. We cannot and do not attribute to him the inability to understand the effect of his action. This same policy is the basis for this suit and recovery.

More than five years elapsed after Mr. Arnold had negotiated with the Central States in regard to his policy and procured the return of premium money he had sent and consented to a cancellation of the policy when this suit was filed. It was nearly seven years since he and the

other officers of the Home Life had entered into this re-insurance contract, and, during all this period, he made no complaint, he took no step to repudiate the contract entered into, but it is urged that this suit against the Home Life is not the pursuit of an inconsistent remedy and that it may, therefore, be maintained as was an effort made under the same contract to sue the Central States. We think that statement is purely voluntary, without merit as having any basis founded upon fact.

The appellee is forced to concede that she filed a suit against the Central States, and that to do so she, as beneficiary, had to rely upon this contract as the sole connection she had with the Central States. The Central States had not issued to Arnold any policy. It had merely reinsured and agreed to take over and perform the contract made by the Home Life. As a consideration for its agreement, the Home Life changed its status and transferred to the Central States not a proportional part, but "all of its property, both real and personal and mixed." The appellee occupies the contradictory attitude of seeking a benefit out of the contract of reinsurance in a claim against the Central States and in the same suit alleges in effect the invalidity of a transfer of all the assets of the Home Life as an inseparable part of the same contract and agreement. She produced at the time of this trial the copy of contract in evidence here, showing this transfer assignment and delivery of all assets as above stated. Not only did Mr. Arnold know these facts, he helped to make this contract, and, moreover, lived under it, accepted the Central States as a party to whom premiums were due and with whom he should negotiate as to the manner in which he might pay premiums fixed under the Home Life policy. The appellee has no greater right and occupies no superior position to that assumed by Mr. Arnold, the insured.

The appellee cites numerous authorities as tending to support the position which she now takes. An analysis of these authorities under the facts as stated therein, as compared with the facts in the instant case, do not justify the conclusion she claims.

Appellee cites as one authority for the course pursued, the case of *Fidelity & Deposit Co. of Maryland* v. *Frazier,* 190 Ark. 833, 81 S. W. 2d 915. In that case the North American Life Ins. Co., issued its policy to Geo. G. Frazier on December 31, 1927. Later the Inter-Southern Life Insurance Company assumed the liability of the North American Life Insurance Company. On August 8, 1932, the Inter-Southern Life Insurance Company, having been declared insolvent, the receiver transferred and assigned all its assets to the Kentucky Home Life Insurance Company, and that company assumed the Frazier policy upon a restricted basis. Frazier filed suit against the Kentucky Company, but could not get service. He then sued the Fidelity & Deposit Company of Maryland as a surety upon the qualifying bond of the Inter Southern Life Insurance Company. He was permitted to maintain and recover in this suit against the bonding company. This recovery was possible because liability against the original reinsurer was fixed as of the date of the total and permanent disability and that disability occurred while the insurance was still in force and carried by the Inter Southern Life Insurance Company. It was a liquidated demand.

The court, in passing upon this question, took notice of the fact there had been an attempt to reinsure and held that unless there had been a novation of the contract, wherein the Kentucky Home Life became bound and the insuring company was discharged, then there could be a recovery. It determined from all the facts and circumstances that there had been no intention to release the original reinsurer, and upon this basis was the suit maintained.

In like manner we think the other cases or authorities cited are easily distinguishable from the one under consideration and do not wish to prolong unnecessarily this discussion and, therefore, do not attempt by analysis to show the fact that they are not applicable.

To constitute a novation the parties enter into a contract whereby the creditor accepts a new debtor for an old one who is discharged.

It may be said also that the effect of the novation is the intention of the parties. That intention, if not expressly declared, may be determined from all other facts, conditions and circumstances.

It seems so nearly elementary, we think it unnecessary to cite a voluminous array of authorities. to support the foregoing propositions. We think the undisputed facts, coupled with the conduct of all the parties clearly evidenced the intention of a novation, and this is further established by long and complete acquiescence in all that was done, and that it is also elementary that this course of action, consistently pursued, works an estoppel to follow another that is to our mind contradictory, or in conflict with the former remedies sought. Authorities are not wanting, but seem unnecessary to support our conclusions.

There are other propositions argued in this matter of appeal as seriously as the foregoing. Numerous authorities are cited in support thereof, but all other questions raised and propositions presented must be regarded as merely incidental to this main issue, and since a determination of this main issue must be as above indicated, that there was in fact and in law an actual novation wherein the Home Life was released and Central States was accepted as the insurer, it follows that the court erred in not directing a verdict for the Home Life.

For the error indicated the judgment is reversed; for the reason that there is no liability under the undisputed facts, the action is dismissed.

Humphreys, J., dissents.