NORDEN *v.* McCALLISTER.

4-7497                                      184 S. W. 2d 459

Opinion delivered January 8, 1945.

1102

*Mike McCuing* and *G. W. Botts,* for appellant.

*Geo. E. Pike,* for appellee.

McFADDIN, J. This appeal involves the foreclosure of a mortgage. In 1933, J. W. A. Norden and J. H. Natho were partners engaged in the mercantile business under the firm name of Rook & Company in Arkansas county, Arkansas; and C. C. McCallister was sheriff of that county. McCallister and Norden had been friends through the years. At one time McCallister had been hard pressed by creditors, and Norden had favored him. In 1933, the situation was reversed: a number of executions against the firm of Rook & Company were placed in McCallister's hands, as sheriff. McCallister agreed with Rook & Company to pay the judgments and executions, if secured by a mortgage on certain real and personal property for the total of the amounts so paid. The parties (Norden and McCallister) calculated such total to be $1,070; and on February 28, 1933, Norden and his wife, and Natho and his wife, executed a note for that amount to McCallister, due November 1, 1933, and bearing interest from date until paid, and secured by a real estate mortgage and also a chattel mortgage. On the strength of this security McCallister paid to the creditors the amount of the judgments. Payments made on the McCallister note are claimed by appellants to total $460; and they were made with sufficient frequency to keep the note in date between the parties.

Natho died; and on March 3, 1942, McCallister filed suit against Norden and his wife, and the widow and heirs at law of Natho, seeking judgments against Norden and his wife personally for the balance due on the note and interest, and judgment *in rem* for foreclosure of the mortgages. During the pendency of the suit, and after his deposition had been taken, C. C. McCallister died testate, and the suit was revived by his executor and bene-

ficiaries and widow and heirs. From a decree granting the plaintiffs judgments as prayed, there is this appeal, presenting the issues herein discussed.

I. *The Proof of Indebtedness.* Appellants claim that the note for $1,070 was for moneys that McCallister might pay on certain judgments, and that the mortgages were security for such payments, and that the note is therefore not an evidence of indebtedness; and appellants, to sustain these contentions, cite language from *Turman* v. *Forrester,* 55 Ark. 336, 18 S. W. 167, as follows:

"Until something was advanced, he had no right to a foreclosure; and when anything was advanced, the amount of it determined the amount for which a foreclosure could be had. Turman has shown that the note as an evidence of debt was a fiction, and that nothing was due when it was given; and if anything afterward became due which entitled the mortgagee to a foreclosure, the burden is on him to show it. Mr. Jones says: 'When the object is simply to indemnify the mortgagee for a liability he has incurred or may incur, the amount of the mortgage, or of the mortgage note, serves merely to limit the extent of the security. Upon the foreclosure of such a mortgage, the amount for which the judgment is to be rendered is the amount the mortgagee has been compelled to pay under the liability for which he was secured, with interest from the date of payment. The amount and date of the mortgage note are wholly disregarded in ascertaining this sum.' I Jones, Mort., § 384; *Moses* v. *Hatfield,* 27 S. C. 324, 3 S. E. 538; *Vogan* v. *Caminetti,* 75 Cal. 438, 4 Pac. 435."

There is no necessity for us to explore this legal proposition to see if it is applicable to the facts in this case, because McCallister, at the time his deposition was taken, produced checks totalling $1,272.30, which he testified he paid in reliance on the mortgage security; and this evidence amply supports the finding of the chancery court to the effect that McCallister paid more than the $1,070, the face amount of the note. Likewise, on the question of credits on the note, little need be said, because

the chancery court allowed the appellants the $460 in credits they claimed.

II. *The Question of Novation.* Appellants claimed that in 1936 McCallister agreed to waive all interest, and to settle for $1,000; and appellants claimed this as a novation of the indebtedness, and asked that judgment be rendered in the chancery court for only $540, being the $1,000 less the credits of $460. On this issue of novation the burden was, of course, on the appellants. *Brewer* v. *Winston,* 46 Ark. 163; *Elkins* v. *Henry Vogt Mach. Co.,* 125 Ark. 6, 187 S. W. 663; 39 Am. Juris. 272; 46 C. J. 625. See, also, *Riddick* v. *White,* 194 Ark. 1010, 110 S. W. 2d 9. The proof was in sharp dispute. Norden testified as to what McCallister said:

". . . He said, 'I am going to make this debt $1,000 and forget about the interest; just make it $1,000.' "

McCallister, on the contrary, testified:

". . . I talked to Mr. Norden. I said, 'If you will get me up $1,000 now, I will clear the record for you.' He says, 'I can't do it.' And that settled it. That is the way it was. I needed the money then. I did not have time to wait for the timber to be cut. In other words, I had to go somewhere else to get the money."

It will thus be seen that McCallister claimed that the offer of $1,000 was for immediate payment, and that no such payment was made. Taking into consideration the sharp dispute in the evidence, and all the other facts and circumstances, we are unable to say that the decree of the chancery court was against the preponderance of the evidence on this issue of novation.

III. *Refusal of the Chancery Court to Appoint a Master.* In the course of the trial, and after a large part of the evidence had been heard, appellants moved the chancery court to appoint a master to hear the evidence and determine the amounts advanced by McCallister to satisfy the various judgments. Appellants now assign as

error the refusal of the chancery court to grant this motion.

We find nothing in the record to indicate any necessity for the appointment of a master. The chancery court is clothed with considerable discretion as regards the appointment of a master. *Bryan* v. *Morgan,* 35 Ark. 113. *Parker* v. *Wells,* 84 Ark. 172, 105 S. W. 75; 19 Am. Juris. 254; 30 C. J. S. Equity 919. In this case the chancery court determined directly from the testimony the amounts advanced by McCallister. The accounts were not complicated. Eight checks were introduced as evidence of the advances. Certainly there was no abuse of discretion by the chancery court in refusing to appoint a master under the fact in this case.

Finding no error, the decree of the chancery court is in all things affirmed.