INTERNATIONAL MINERALS & CHEMICAL CORPORATION *v.* DON S. CAPLINGER

5-4124 411 S. W. 2d 526

Opinion delivered February 20, 1967

*Barrett, Wheatley, Smith & Deacon*; By: *Joe C. Boone,* for appellant.

*Greer & Collier* and *Ward & Mooney,* for appellee.

PAUL WARD, Justice. This is a suit to collect for goods sold—but under unusual circumstances which will be explained. The facts presently set out are not controverted.

(a) International Minerals and Chemical Corporation (appellant)—a foreign corporation authorized to do business in Arkansas—is engaged in selling fertilizer

1056

to its agents who are retailers. (b) In this case Waldenburg Gin and Supply Company was its agent to retail fertilizer in Poinsett County. (c) Don S. Caplinger (appellee) was the sole owner of said company. (d) On February 17, 1960 appellant and appellee executed an "Agent's Contract" which is quite lengthy and deals with many items not pertinent here. In material part it provides that appellee guaranteed to pay for all fertilizer purchased for resale. (e) On June 25, 1964 when appellee sold his business (including all assets) to Clinton E. Bowling, he owed appellant a balance of $18,810.65. (f) On the date last mentioned and when appellee refused to pay said balance Bowling executed three notes to appellant totaling the amount due—the notes were due December 1, 1964. (g) Bowling paid off two notes, but appellant was unable (after many efforts) to collect the third note in the amount of $6,810.65.

On July 23, 1965 appellant filed this suit against appellee to collect "said account". The essence of appellee's answer which is pertinent here was: (a) A few hours before Bowling executed the notes appellee notified appellant that he had sold out to Bowling "including its accounts both payable and receivable". (b) With that knowledge appellant "accepted the note ... and in doing so extended the due date without notice .... " (c) This indulgence without notice operated to release him from further liability.

The matter proceeded to trial before a jury, and, after both sides rested, the trial judge instructed a verdict in favor of appellee on the ground that, as a matter of law, appellee "was not responsible to plaintiff upon the account sued on because of indulgence granted by plaintiff to one Clinton Bowling subsequent to December 1, 1964".

It is not disputed that: (a) Appellee purchased fertilizer from appellant; (b) He owed appellant a balance of $18,810.65 on or about June 25, 1964; (c) $12,000 has been paid; (d) A balance of $6,810.65 is unpaid, and; (e) Appellee guaranteed the payment of said amount.

To avoid liability for the above amount, appellee contends: *One*. The time of payment was extended without his knowledge. *Two*. There was a "novation" of the written "Agency Contract".

*One*. It is here contended by appellee that he was relieved of all obligation to pay appellant because he (appellant) gave Bowling extra time in which to pay. We are unable to agree with this contention.

In the first place appellant sued on the overdue "account" which appellee acknowledged but refused to pay, and did not sue on the note. Not only so, but we find nothing in the record to show appellant ever extended the time for Bowling to pay the note or the account. What appellant did do was to make repeated efforts to have Bowling pay, and when this failed it filed this suit against appellee.

This action by appellant merely tended to protect appellee from having to pay the balance due on the account.

*Two*. Appellee's further contention is that when Bowling executed his note to appellant that constituted a "novation" and, thereby, released him from all obligation to pay the past due account. This contention is not in accord with our decisions under the facts in this case.

This issue was considered in the case of *Simmons National Bank* v. *Dalton,* 232 Ark. 359, 337 S. W. 2d 667. In that case, in holding Dalton was not released from liability on the ground of a *novation,* we used language applicable to this case. There the Bank made efforts to collect from Thompson who was secondarily liable, and we said: ". . . what the Bank did amounted to nothing more than an effort to accommodate Dalton in its efforts to have Thompson pay Dalton's debt." We said:

"Our decisions and the text-writers appear to be uniform in holding that it is necessary to show an *intent* on the part of the creditor to release an old debtor and substitute therefor a new debtor. In *Home Life Insurance Company* v. *Arnold*, 196 Ark. 1046, 120 S.W. 2d 1012, this Court, in dealing with this same question, said: '. . . the effect of the novation is the *intention* of the parties.' (Emphasis supplied.) Likewise, at Pages 266 and 267 of Volume 39 Am. Jur., it is stated, among other things, that: 'In order to effect a novation there must be a *clear and definite intention* on the part of *all* concerned that such is the purpose of the agreement.' (Emphasis supplied.)"

We also said: "In a case of this kind the burden was on Dalton to show that he has been released by appellant Bank," citing *Brewer & Son* v. *Winston*, 46 Ark. 163.

In our opinion there is no testimony in the record that shows "a clear and definite intention" of the parties to this action to release appellee from liability. To the contrary, William Little, an agent of appellant, stated that on June 26, 1964 he called on appellee to settle the account he owed appellant; that he learned appellee had sold to Bowling; that appellee told him "it would be all right to have Mr. Bowling sign the notes"; he then told appellee that "if anything happened and the notes were not paid, we would look to him for payment on his personal guarantee."

Appellee testified, on cross-examination, that when Mr. Little called him to settle the account he refused to execute any notes or be responsible any further, and that Bowling had no authority to bind him.

Clearly a fact question was made for the jury on this point, and the court erred in directing a verdict for appellee.

Reversed.