CAMFIELD TIRES, INC. *v.* CARL R. MOSELEY

5-6074                                      487 S.W. 2d 268

Opinion delivered December 11, 1972

*Davis & Reed,* for appellant.

*Murphy, Carlisle & Taylor,* for appellee.

LYLE BROWN, Justice. This cause originated as an action for an accounting brought by the appellee, Moseley, against his employer, Camfield Tires, Inc. The critical issue at the trial level was to determine what the written contract of employment meant by "two per cent gross profit". The trial court determined that the basis of calculation as contended by appellee-employee was correct and awarded judgment for $5064.78.

The contract of employment became effective February 11, 1968. It provided for employment of appellee as a tire salesman at appellant's place of business in Springdale, Arkansas. Appellee was to receive a salary of $125 per week and two per cent of the gross profits. The contract did not attempt to define the meaning of "gross profits". During the ensuing three years appellant paid appellee a total of $1718.76 in bonus money. Appellee became dissatisfied with the amounts of the bonuses. During the absence of Camfield and the bookkeeper, appellee obtained from appellant's files income statements for most of the period covered by his employment. Those statements were prepared by appellant's accountant. Had appellee's bonuses been calculated on the basis of the gross income shown on those statements, the amount would far exceed that which had been paid in bonuses. It was then that appellee filed this suit for accounting and judgment. Other pertinent facts will be related as we discuss the points for reversal.

POINT I. THE TRIAL COURT ERRED IN DISREGARDING EVIDENCE THAT ACCORD AND SATISFACTION DISCHARGING THE CONTRACTUAL OBLIGATIONS IN CONTROVERSY WAS HAD. Appellee filed this suit on April 23, 1971. He continued to work until May 21, 1971, on which date he was discharged. On the discharge date he was given a check for $111.66, being the precise amount of his weekly salary check after deductions. There was a notation on the check reading "final settlement". It was signed by the corporation's bookkeeper. There was no proof that there was any conversation between appellee and the bookkeeper about that payment being any part of a

settlement concerning the bonus controversy. In fact appellee testified—and it was uncontroverted—that the check represented his final salary payment. The transaction whereby appellee was given the check does not meet the test of accord and satisfaction. As well stated in 1 Am. Jur. 2d, Accord and Satisfaction, § 1:

> To constitute an accord and satisfaction there must be an offer in full satisfaction of the obligation, accompanied by such acts and declarations as amount to a condition that if it is accepted, it is to be in full satisfaction, and the condition must be such that the party to whom the offer is made is bound to understand that if he accepts it, he does so subject to the condition imposed.

Another important circumstance tending to prove that it was a regular weekly salary check: appellant was contending all along that it owed nothing as respected the bonuses; in fact it was testified that appellee had in fact been overpaid for bonuses.

POINT II. THERE IS NO SUBSTANTIAL EVIDENCE UPON WHICH THE JUDGMENT OF THE TRIAL COURT SHOULD BE SUSTAINED; FURTHER, THAT SAID JUDGMENT DOES NOT CONFORM TO THE EVIDENCE OR TO THE LAW. Under this point three separate arguments are advanced. First, it is contended that there is not sufficient evidence to support the trial court's finding that two per cent of the gross profits for the periods amounted to $5064.78. Precisely the argument here is that the trial court used the wrong figures for gross profits. Mr. Camfield testified that the two per cent figure he used for bonuses were based on net income. Mr. Camfield's certified public accountant was called as a witness by appellee. He identified the profit statement covering the years of appellee's employment. They were prepared by the accountant. Those exhibits of course arrived at gross profits. He took the gross sales figure and deducted therefrom the cost of the merchandise and the freight; the difference gave him the gross profit.

Another important exhibit was introduced. Appellee had in his possession a sheet reflecting a year-to-year summary of profits. It covered the twelve years immediately preceding appellee's employment. Appellee said Mr. Camfield gave appellee this sheet at the time they were discussing his possible employment. When that sheet is analyzed it is evident that in calculating the gross profit for each year the same procedure was used as was utilized by appellant's auditor during appellee's tenure. The trial court concluded, and we think correctly so, that appellant was bound, in arriving at gross profits, by its own long established method of arriving at gross profits. In other words, the chancellor apparently reasoned that when the employment contract was drawn, the term "gross profits" meant exactly what was reflected by appellant's records for a continuous period of twelve years prior to employment of appellee.

The second argument under Point II is that of novation. The corporate appellant established a branch office in Rogers, Arkansas, several months before appellee was discharged and appellee was placed in charge of that store. So during those months appellee spent only a part of his time at the Springdale store. Appellee overlooks the fact that novation was not pleaded, either expressly or by unequivocal implication. It is an affirmative defense which must be pleaded and the answer must allege the essential elements of a novation. 66 C.J.S., Novation § 25. Also, see *Elkins* v. *Vogt Machine Co.,* 125 Ark. 6, 187 S.W. 663 (1916). Furthermore, the employment agreement contained a provision that either party could cancel the contract by giving 14 days written notice. It is our impression that the notice was not given by the employer until after the suit was filed.

The final argument is that the trial court erred in admitting the summary sheet heretofore referred to as reflecting profit and loss for a twelve year period. It was introduced without objection. It is argued that those figures were shown appellee merely as an inducement for him to come to work. Appellant says that "promissory inducements cannot be asserted to vary the terms of a

subsequent written contract". The limited use to which the court utilized the summary sheet was perfectly proper. The trial court said the exhibit showed appellant's accounting method for a twelve year period. The court remarked: "There was nothing in the testimony to show at any time .... a more precise definition of gross profits and net profits for some ten years preceding Mr. Moseley's employment, and was shown to Mr. Moseley by Camfield".

Affirmed.