Benjamin F. BARTON, et ux *v.*
George E. PERRYMAN, et al

78-169                                        577 S.W. 2d 596

Opinion delivered March 5, 1979
(In Banc)

*Kenneth E. Suggs,* for appellants.

No brief for appellees.

DARRELL HICKMAN, Justice. This is an appeal of a chancery foreclosure decree and judgment on a contract of sale. We find the decree must be reversed.

The sellers and appellees, George E. Perryman and others, had sold a house trailer and lot located in Perry County. The initial sale was to Vernon and Elizabeth Highfill in 1973. The sale was perfected by the execution of a Purchaser's Agreement and promissory note which was prepared by the appellees calling for payment in monthly installments.

In 1974, the original Purchaser's Agreement was assigned to the appellants, Benjamin and Connie Barton. The appellees consented in writing. In 1975, the Agreement was again assigned from the Bartons to Michael and Melissa Black using an identical assignment and consent form signed by the parties.

The trailer burned and it was discovered that there was no insurance. The appellees filed a foreclosure suit seeking a judgment against all of the purchasers and assignees for the balance due on the note and, after an agreed sale, a deficiency judgment was entered against these appellants and the Blacks.[1]

The chancellor held that none of the parties had been released from their agreement to buy the property.

The appellants argue on appeal that the chancellor was incorrect because it was the intention of the parties that upon

[1] (The first buyers were never served. The Blacks did not appeal.)

each assignment, the assignors were discharged, and the assignees were substituted in their place as a result of a novation. We agree with this argument and reverse the decree of the chancellor.

The chancellor, no doubt, relied upon the law that when rights are assigned and duties delegated, as in this case, the original obligor remains liable as a surety unless he is discharged by novation. Restatement of Contracts §160 (1932). However, an examination of the facts in this case leads us to conclude that it was the intention of the parties in this case that the Blacks be substituted as obligors in place of the Bartons, rather than merely added as additional debtors.

The original Purchaser's Agreement was prepared by the appellees, who were not attorneys, and it is a form instrument. There are two relevant provisions, one which was added by the Perrymans and the other which was contained in the form instrument. The added clause, typed in by the Perrymans, reads:

> Buyer agrees to reimburse seller for yearly insurance premiums in the event that seller must maintain insurance. Buyer also agrees that said mobile home shall not be removed from property without the written consent of seller.

The printed instrument contained a standard provision which reads as follows:

> This AGREEMENT shall not be sold, transferred or assigned, nor shall said property be leased, without written consent of SELLER, and in the event of any sale, assignment, transfer or lease, without written consent, SELLER shall have the right to exercise the options hereinbefore provided in Paragraph 3. In the event of a sale, transfer or assignment of this AGREEMENT with SELLER'S written consent, the assignee or grantee shall succeed to all the rights and liabilities of BUYER, according to the terms of the assignment and consent to be attached hereto.

In 1974, when the appellants purchased the property from the Highfills, the Perrymans prepared an assignment and a consent, which we reproduce.

*Attach This Copy to Contract an Tract 1:*

PERRYMAN REALT⟨...⟩ ). 213 Kingsrow Dr. L⟨...⟩ Rock, Arkansas 72207
(Specializing in acreage and land Developing)

Phone— 666-7693

ASSIGNMENT OF PURCHASER'S AGREEMENT
LEGAL DESCRIPTION:. TRACT #13.. .....

DATE *Oct 2 1974*

PURCHASER: *Vernon W. Highfill*....
ADDRESS....*Rt. 1, Scotland, Ark*........

This is to certify that, for *Zero* DOLLARS and other valuables and subject to the consent of the owner of the property herein described, the undersigned does hereby sell, assign, trans- fer, and set over and unto .BENJAMIN AND CONNIE BARTON....... all his right, title, and interest in and to the said PURCHASER'S AGREEMENT.

*Vernon W. Highfill*.........

BALANCE AS OF 10/2/74 ($10,200.02)
TRACT #13, MAUMELLE ESTATES,
AND A 1973 SUBURBAN DELUXE(12X60)
SER. #SN1-60122CK3006

X *Elizabeth M. Highfill*...

ACCEPTANCE OF PURCHASER'S AGREEMENT
BY NEW PURCHASER

NEW PURCHASER *Benjamin F. and Connie Barton*
ADDRESS..*Rt. 1, Scotland, Ark*.......

The undersigned hereby accepts the above assignment of the PURCHASER'S AGREEMENT and hereby expressly agrees to be bound by all of the terms and conditions of the PURCHASER'S AGREEME- NT.

*Benjamin F. Barton*.........
*Connie Barton*.........

CONSENT TO ASSIGNMENT OF PURCHASER'S
AGREEMENT BY OWNERS

The undersigned, owners of the property described in the said PURCHASER'S AGREEMENT, hereby consents to the above assignments and acceptance thereof.

*Vernon A. Perryman*....
*Donnie N. Perryman*

................................
................................

"Novation is the substitution by mutual agreement of one debtor, or of one creditor, for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished."

*Riddick* v. *White,* 194 Ark. 1010, 110 S.W. 2d 9 (1937). That intention need not be expressly declared, but may be found upon examining the surrounding circumstances. *Home Life Insurance Co.* v. *Arnold,* 196 Ark. 1046, 120 S.W. 2d 1012 (1938).

Like any other contract, a novation must be supported by consideration. Here the consideration was approximately $400.00 the Bartons paid the Perrymans, and an additional fee of $100.00 to the Perrymans for preparing the simple assignment and consent.

The Bartons testified that they were assured that there was insurance on the property and they would be billed for any insurance and taxes. The Perrymans produced evidence that the Highfills paid $26.67 as their pro rata share of the insurance. The Perrymans, of course, point to the provision in the original contract which holds the purchaser responsible for maintaining insurance. However, it was not disputed that the Perrymans never billed the Bartons for any insurance or taxes or took any steps to make certain that the property was insured at any time after the assignment to the Bartons. (The Bartons held the property from October 2, 1974, until June 17, 1975).

In 1975, the Bartons decided to sell the property to the Blacks for $1,000.00. Benjamin Barton sought the Perrymans' consent and was told that it was the policy of the Perrymans to require new purchasers to buy some equity in the property because it prevented people from moving in and out. It was agreed that the Blacks would pay $1,000.00. However, at Perrymans' insistance, $410.15 was paid directly to the Perrymans as equity. $100.00 was paid to the Perrymans for preparing an identical assignment and consent as we have reproduced herein. The Blacks paid the Bartons $500.00 and executed a note for $500.00 to the Bartons which was never paid.

The trailer burned and it was discovered that there was no insurance on the property and this lawsuit naturally resulted from that fire loss. While the assignments and consents did not expressly release the old purchaser, we have no difficulty in finding that it was the intention of the Perrymans

to release the old obligations by accepting the new ones.

First, all of the instruments, none of which were recorded, were prepared by the Perrymans. The assignment, prepared by the Perrymans and consented to by them in writing, provided that the Bartons "do hereby sell, assign, transfer, and set over all their right, title and interest in and to the property" to the Blacks. There was no express assignment of the note but only of the Purchaser's Agreement. We have said in a similar situation that a note and mortgage are inseparable. As assignment of the note carries the mortgage, while an assignment of a mortgage alone is a nullity. *Bryant* v. *Easton Tire Co.* 262 Ark. 731, 561 S.W. 2 79 (1978). Considering the language of the assignment, which seems to set over all rights and interest in the property, and the fact that the Perrymans in preparing the assignment and consent did not mention that the note was assigned, there would seem to be an uncertainty as to the liability imposed by these documents.

It is a rule of law that documents that contain ambiguities will be construed against the party who drafted them. *Christmas* v. *Raley,* et al, 260 Ark. 150, 539 S.W. 2d 405 (1976).

Next, the Perrymans, who were not authorized to practice law, in two instances charged a fee of $100.00 for the preparation of the simple but brief documents. In each instance they required the new buyer to pay equity to them in the property. The Bartons paid approximately $400.00 and the Blacks paid $410.15 to the Perrymans upon assignment.

Furthermore, there is the testimony of the Bartons that they were told that insurance did exist on the property and that they would be billed for any future insurance. While it was the buyer's obligation to maintain insurance, the contract clearly provided that the sellers, who were the Perrymans under that document, could bill them for it. There was no effort on the part of the Perrymans to make certain that the property was insured.

One of the most important factors is that each time the

Purchaser's Agreement was assigned, the Perrymans required of the assignee a substantial payment of principal.

In summary, this is a case where the original seller chose to directly deal with each assignee requiring payment towards the principal due instead of remaining at an arms length distance from the transaction. Considering all the facts we have recited herein, there is no doubt there was a mutual agreement of the parties to release the Bartons of liability. Therefore, we reverse the decree of the chancellor.

Reversed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot join in the reversal of the chancery court's holding that there was not a novation in this case. If there is a novation here, then I do not see how a seller of property of this type can require that assignment of a purchase agreement be approved by him and avoid a release of the original purchaser on his obligation when he approves. In order to show why I think the chancellor was right and the majority clearly wrong, it is necessary that I show the basis for my understanding of the doctrine of novation.

The various treatise writers have made general statements relating to what constitutes a novation and how a novation can be distinguished from a simple assignment of contractual rights and obligations. The following can be found in Corbin on Contracts, § 1301, p. 228:

> Frequently an assignee of contract rights undertakes to perform the assignor's duties also. This is not operative as a novation, since the assignor remains bound by those duties so long as his creditor does not accept the assignee's new promise in lieu of the duty of the assignor. The creditor's actually receiving a payment or other part performance from the assignee, knowing that he has undertaken to perform, is not an assent to a novation discharging the assignor unless the

assignee's performance is tendered not merely as a satisfaction pro tanto of the assignor's duty but also on condition that the assignor shall be discharged from any further duty. In like manner, the creditor's written expression of assent does not operate as a discharge of his debtor by novation where he has merely been notified that an assignment of contract rights has been made and that the assignee has assumed the performance of the assignor's duties. Such an assumption merely gives to the creditor an additional security. His expression of assent does not go beyond this, unless the notice to which he assents is clearly a proposal for a substitution of debtors instead of a mere reasonable interpretation.

From Williston on Contracts, § 353, p. 815:

> *** A novation is essentially a new contract whereby the creditor accepts the promise of a new debtor in lieu of the original debtor.
>
> ***

As to the elements essential to a novation, the courts have said:

The necessary legal elements to establish a novation are (1) parties capable of contracting; (2) a valid prior obligation to be displaced; (3) the consent of all parties to the substitution; and (4), lastly, the extinction of the old obligation and the creation of a valid new one.

A novation is not made out by showing that the substituted debtor agreed to pay the debt. It must appear that he agreed with the creditor to do so. Moreover, this agreement must be based on the consideration of the creditor's agreement to look to the new debtor instead of the old. The creditor's assent to hold the new debtor liable is therefore immaterial unless there is assent to give up the original debtor. It is not essential that acceptance of the terms of the novation and release of the debtor be shown by express agreement.

And finally, the Restatement of the Law, Contracts, pp. 798 and 805, contains these statements at the sections indicated:

## § 424. DEFINITION OF NOVATION.

A novation within the meaning of the Restatement of this Subject is a contract that
    (a) discharges immediately a previous contractual duty or a duty to make compensation, and
    (b) creates a new contractual duty, and
    (c) includes as a party one who neither owed the previous duty nor was entitled to its performance.

## § 428. NOVATION DISCHARGING DEBTOR BY THIRD PERSON'S ASSUMPTION OF DUTY ASSENTED TO BY CREDITOR.

Where a third person contracts with a debtor to assume, as an immediate substitution for the debtor's duty, a duty to the creditor to render either the performance for which the debtor was previously bound, or some other performance, and the creditor agrees either with the debtor or with the third person to such substitution, there is a novation that discharges the original debtor and subjects the third person to a duty to the creditor.

Comment:

***

*b.* The creditor can effectively manifest agreement to the substitution either to the original debtor or to the third person. If the assent is manifested to the debtor, it amounts to a direct agreement with the debtor to discharge him in consideration of the substituted right offered by the agreement between the debtor and the third person. If the creditor's manifestation of agreement is made to the third person it amounts to an agreement with the latter to discharge the original debtor in consideration of the new right. And since a creditor can discharge a debtor's duty by accepting as satisfaction a third person's promise or performance, the original debtor is immediately discharged. Nor can the discharge be disclaimed by him, since by virtue of his con-

tract with the third person he has already assented to have the debt discharged in that way.

Arkansas cases on the subject of novation are not numerous; however, some of them could be of assistance in this case. First, novation, as an affirmative defense must be specifically pleaded, and the answer must allege the elements of a novation. *Camfield Tires, Inc.* v. *Moseley,* 253 Ark. 585, 487 S.W. 2d 268. The affirmative defense of novation must be pleaded either expressly or by unequivocal implication. Although the answer of the defendants does not appear to meet the requirements of *Moseley,* the brief in support of the defendants' demurrer to the complaint of the plaintiff dealt with novation, so arguably, the issues of the alleged novation was raised.

There are at least two Arkansas cases which contain general statements concerning the elements of novation and the application of the defense. The first of these is *Simmons National Bank* v. *Dalton,* 232 Ark. 359, 337 S.W. 2d 667, where the trial court found that a novation existed on an action for a note to finance a car which had been traded to another, who agreed to make the payments on the note. Although it was conceded that the creditor was not aware of the assignment at the time it was made and did not agree to release the original debtor from liability, the appellee pointed to the fact that the creditor had attempted to collect from the assignee numerous times. This court found that the trial court erred in finding that there had been a novation. We emphasized the necessity for showing a *clear and definite intention* of the creditor to release the old debtor in order to sustain a defense of novation. The court made the following statements:

> *** In that case [*Elkins* v. *Henry Vogt Machine Company,* 125 Ark. 6, 187 S.W. 663] this Court quoted with approval from 29 Cyc. 1130: "It is not essential that the assent to and acceptance of the terms of the novation be shown by express words to that effect, but the same may be implied from the facts and circumstances attending the transaction, and in the conduct of the parties thereafter. *Such consent is not to be implied merely from the performance of the contract by the substitute, for that might well con-*

*sist with the continued liability of the original party . . .* " (Emphasis supplied.)

In a case of this kind the burden was on Dalton to show that he had been released by appellant Bank . . . "The burden was upon the defendant to prove that he had been discharged by a novation of the contract." This statement relative to the burden of proof has been approved in many other decisions of this Court.

Our decisions and the text-writers appear to be uniform in holding that it is necessary to show an *intent* on the part of the creditor to release an old debtor and substitute therefor a new debtor. In *Home Life Insurance Company v. Arnold,* 196 Ark. 1046, 120 S.W. 2d 1012, this Court, in dealing with the same question, said: ". . . the effect of the novation is the *intention* of the parties." (Emphasis supplied.) Likewise, at Pages 266 and 267 of Volume 39 Am. Jur., it is stated, among other things, that: "In order to effect a novation there must be a *clear and definite intention* on the part of *all* concerned that such is the purpose of the agreement." (Emphasis supplied.) In Williston on Contracts, Volume 6, Revised Edition, at Page 5254, Section 1870, under the sub-title *"Necessity for the assent of all the parties to a simple novation"* it is stated: "It is undoubtedly a *commonplace* in the discussion of novations that the *assent* of all the parties is necessary; and certainly . . . no old debtor can be discharged without the creditor's consent, . . . " (Emphasis supplied.) Numerous cases therein are cited sustaining the above announcement.

And then, in *Alston v. Bitely,* 252 Ark. 79, 477 S.W. 2d 446, the court was presented with the argument that an extension agreement as to notes due and payable constituted a novation for one of the parties liable on the note originally. The court sustained the chancellor's finding that a novation had not occurred. From the opinion:

In order to constitute a novation, there must be a clear and definite intention of the parties that such is the purpose of the agreement. [Citations omitted.] There

must be an intention on the part of the creditor to release the original debtor. [Citations omitted.] The question to be determined is whether by the execution and delivery of the extension agreement, the parties clearly intended to extinguish the old debt and rely entirely on the new, or to keep the old debt alive and merely accept the new as new security or evidence of the debt. [Citation omitted.] The existence of this intention, if it is not expressly declared, must be decided from all of the circumstances in the case, including the subsequent conduct of the parties. [Citation omitted.] The issue is one of fact if there is any conflicting evidence or if the terms of the agreement are capable of more than one construction [Citations omitted.] *We have said that the intention must be so evident as to leave no room for doubt.* [Citations omitted.]

Where the intention to release an old obligation by acceptance of a new one is not expressly stated, *one of the strongest indications of a contrary intention is the retention of the original evidence of debt by the creditor.* [Citations omitted.] . . . It has been said that where a new note is not the obligation of all the parties liable upon the original note, there is no presumption that the former was given and accepted as a discharge of those liable on the latter. [Emphasis mine.]

\*\*\*

Where there is a conflict in the evidence pertaining to the issue of novation, we will not reverse where we are unable to say that the decree of the chancery court was against the preponderance of the evidence. *Norden v. McAllister,* 207 Ark. 1011, 184 S.W. 2d 459. The chancellor's opinion and the court's decree constituted a finding of fact adverse to appellant on this issue. We cannot say that the preponderance of the evidence does not support the finding.

The chancellor specifically found that appellees accepted the assignments but did not release any of the defendants. On trial de novo, we cannot reverse this finding un-

less it is clearly against the preponderance of the evidence. See, *Alston* v. *Bitely,* supra.

I submit that the evidence in this case fails to support a novation in several respects. I would first point out that the question here is whether there was a novation when the Perrymans accepted the assignment by the Bartons to the Blacks. The assignment by the Highfills to the Bartons is not in issue. There is certainly nothing in any of the terms in the written instruments to show that the Bartons were released. There was never any submission to the Perrymans of any proposal that there be a *substitution of debtors* instead of a *mere assumption* of duty *by the assignee.* There is no evidence of the *extinction of the old obligation* and the creation of a valid new one. There is no evidence that the agreement by the Blacks with the Perrymans to pay the debt was based upon the consideration of the Perrymans to look to the Blacks *instead* of the Bartons, i.e., that the Perrymans assented to give up the Bartons as the old debtor. There is no evidence that the Perrymans discharged the previous contractual duty of the Bartons, or agreed to do so. To say the least, appellees did not meet their burden of showing a *clear and definite intention* on the part of the Perrymans to release the Bartons, i.e., one so evident as to put the matter *beyond doubt.* See *International Minerals & Chemical Corp.* v. *Caplinger,* 241 Ark. 1055, 411 S.W. 2d 526. And there was the strongest possible evidence to the contrary — the retention by the Perrymans of the original evidence of the debt of the Bartons. See *Alston* v. *Bitely,* supra.

In the very first case cited in the majority opinion, we followed the definition of novation, in our holding that there was not a novation, with this:

*** In *Cockrill* v. *Johnson,* 28 Ark. 193, there is this declaration of the law: "In the substitution of a new debt or obligation for an old one, which is denominated in the civil law a novation, the intention of the parties to that effect should be *positively* declared; or at least in whatever manner expressed, it should be *so evident as not to admit of a doubt:* in other words, a novation is not to be presumed unless the intention to that effect evidently appears." See, also, *Brewer* v. *Winston,* 46 Ark. 163; *Han-*

son v. *Louisiana Oil Refining Corp.*, 186 Ark. 331, 53 S.W. 2d 430. [Emphasis mine.]

I completely disagree with the majority's statement (for which it cites no authority) that a payment on the original debt can be the consideration for a novation. Cf. *Denman v. Bruce-Rogers Co.*, 190 Ark. 1098, 82 S.W. 2d 844. Most assuredly, a payment by the Bartons when the assignment was made to them cannot be a consideration for a novation substituting the Blacks for the Bartons as obligors; neither can the payment of a fee for preparing the document by which the assignment from the Bartons to the Blacks was made and the consent of the Perrymans was given. How, I ask, can the fact that an instrument evidencing the assignment was prepared by the Perrymans be evidence of intention to enter into a novation? Of course, it can't; and if that fact is of any probative effect at all, it indicates that there was no intention to release the Bartons, because no mention is made of any release or substitution.

I also ask, what could the lack of assignment of the note have to do with the matter? Obviously, nothing, because a maker or obligor on the note can't assign it. And to whom should the Perrymans have assigned it, if they wanted to hold the Bartons? What could they possibly have put about the assignment of the note into the assignment by the Bartons of the purchase contract to the Blacks? What uncertainty as to liability did this omission create? And what ambiguity is there to be resolved against the Perrymans? The statements in the assignment and consent are crystal clear. The courts cannot import an ambiguity into an instrument in order to resolve it against the draftsman. *Looney* v. *Allstate Insurance Co.*, 392 F. 2d 401 (8 Cir., 1968); *Bodcaw Oil Co.* v. *Atlantic Refining*, 217 Ark. 50, 228 S.W. 2d 626; *Jefferson Square* v. *Hart Shoes*, 239 Ark. 129, 388 S.W. 2d 902; *Inman* v. *Milwhite Co.*, 402 F. 2d 122 (8 Cir., 1968). The rule that language in a contract is to be construed most strongly against the party responsible for it is the last one to be applied by the courts, and then only when a satisfactory result cannot be reached by resort to other rules of construction. 17A CJS 224, Contracts, § 324.

What possible relevance could the failure of the Perrymans to insure the property or, not having exercised their option to do so, to bill the Bartons for it, have on the question of novation?

The requirement of a payment on the principal debt before consent to assignment was given would not constitute a novation, unless the payment was specifically made on condition that the assignor was to be released. See *Denman v. Bruce-Rogers Co.,* supra. There is not one word of testimony that this was the case.

I am also unable to fathom the reasoning by which the unauthorized practice of law by the creditor would be of any probative value on the question of novation. Here's another complete mystery to me: How can a seller (creditor) remain at arm's length from a transaction relating to an assignment to which he must consent?

The fact-finding of a chancellor, who saw and heard the witnesses, should never be overturned upon such a flimsy basis.

Obviously, I would affirm the decree.