Edgar A. STACY, III *v.* ST. CHARLES CUSTOM
KITCHENS OF MEMPHIS, INC.

84-195                                    683 S.W.2d 225

Supreme Court of Arkansas
Opinion delivered January 28, 1985

*Reid, Burge & Prevallet,* for appellant.

*Bill E. Ross,* for appellee.

JACK HOLT, JR., Chief Justice. The central issue in this case is whether the contract in question is governed by the laws of Tennessee or those of Arkansas.

The parties entered into a contract which called for the appellee, St. Charles Custom Kitchens of Memphis, Inc., (hereinafter, "St. Charles") to install a custom kitchen in the appellant's home in Blytheville, Arkansas. St. Charles is a Tennessee corporation. A disagreement arose between the parties as to the final contract price, the contract terms and the performance required. The appellant paid roughly two-thirds of the contract price to St. Charles but refused to pay the remaining amount, claiming that the materials and workmanship were not satisfactory. St. Charles began sending statements to the appellant which included late charges, in an effort to collect the balance remaining. When the appellant continued to refuse to pay, St. Charles filed this lawsuit.

In its complaint for money damages St. Charles alleged that the contract was governed by Tennessee law. The appellant answered, alleging breach of contract; usury, triggered by the late charges; and failure to comply with the Wingo Act which requires foreign corporations who do business in Arkansas to register with the Secretary of State. The trial court held that the agreement was a Tennessee contract and denied the appellant's motion for a directed verdict, which was based on the defenses of usury and violation of the Wingo Act.

The jury awarded St. Charles $6,117.72. This appeal from the denial of the motion for directed verdict is before us under Sup. Ct. R. 29(1)(c) and (*l*).

The appellant raises two questions on appeal. He argues that the trial court erred in failing to grant his motion for directed verdict on the basis of usury and on the basis of the Wingo Act. Since both questions initially require a determination as to which state's law governs the contract, that issue will be discussed first.

In *Grogg* v. *Colley Home Center, Inc.*, 283 Ark. 120, 671 S.W.2d 733 (1984), this court most recently addressed the question of what law governs the validity of a multistate contract. Citing an earlier decision, *Cooper* v. *Cherokee Village Development Co.*, 236 Ark. 37, 364 S.W.2d 158 (1963), we discussed the three theories used in making this determination:

> 1) The law where the contract was made; 2) the law where the contract was to be performed in its most essential features; and 3) the law of the state which the parties intended to govern the contract. We noted, too, in *Cooper* a consistent preference for the law of the state that would make the contract valid rather than void. An exception to the application arises, however, when the issue of usury is involved and the laws of another state become a sham for charging a higher rate and avoiding the harsh penalty applied by our law.

Applying the *Grogg* analysis to the facts of this case, we find that under the first theory, the law where the contract was made, the sales contract was signed in Tennessee at St. Charles' Memphis office. The appellant argues that a novation of the sales contract occurred in Arkansas when changes were made on the original blueprints. This argument is not persuasive however since the contract itself provided that it "cannot be altered or modified except in writing executed by the 'Seller.' " The novation alleged by the appellant was based on an oral modification of the sales contract. In addition, the novation argument fails because it was not specifically pled by the appellant in the proceedings

below. Novation is an affirmative defense which must be pleaded. *Camfield Tires, Inc.* v. *Moseley,* 253 Ark. 585, 487 S.W.2d 268 (1972), AR Civ. P Rule 8(c).

Under the second theory, the law where the contract was to be performed in its most essential features, both states are connected to the contract. Since the cabinets were installed at appellant's Blytheville home, the majority of the contract was performed in Arkansas. However, the ordering of the materials and some of the work on the blueprints was apparently done out of St. Charles' Memphis office. Payments on the contract were also split, with the initial payment made in Tennessee and the second payment in Arkansas.

The final test is the law of the state which the parties intended to govern the contract. The appellant came to Memphis to hire St. Charles and the contract states that it is not binding on the seller unless accepted at the home office in Memphis. On the other hand, Arkansas sales tax is used on the schedule of materials; St. Charles filed a lis pendens in Arkansas to secure the debt; and St. Charles charged a 10% late charge, the maximum allowable in Arkansas, even though the form statement provided for a 1½% per month late charge.

The situation in *Grogg* was similar in that two states, Oklahoma and Arkansas, had connections to the contract. That case involved an installment loan contract for the purchase of a mobile home. The mobile home was purchased in Oklahoma and delivered to Grogg in Arkansas. The majority of the negotiations, the signing of the documents and the down payment occurred in Oklahoma. However, Arkansas sales taxes were paid; there was a U.C.C. filing in Arkansas; the home was licensed and titled in Arkansas; the license fee charged was based on Arkansas licensing fees; and the insurance on the home was written in Arkansas. Nevertheless, this court held that Oklahoma law governed the contract inasmuch as "we will choose the law of the state that will make the contract valid rather than void". In so doing, we stated:

In this case . . . we find there are substantial connections to either Arkansas or Oklahoma to allow the laws of either state to govern the transaction and absent a showing of the usurious cloak we will choose the law which will uphold the contract's validity. Such choice is based on a presumption that the parties intended to contract with reference to the law that would uphold, rather than invalidate, their contract. (citations omitted). In addition to this presumption we have the fact that Grogg without solicitation or any underhandedness on the part of the appellee sought out the Oklahoma place of business, all the negotiations for the purchase occurred in Oklahoma . . . all of the many documents were executed in Oklahoma, the primary contracts stated clearly the place of execution as Oklahoma, and on the face of the contracts the interest rate of twelve percent was obviously stated in clear, unambiguous terms. . . .

This is not a case of a wholly Arkansas contract where there has been an attempt to avoid the usury law by substituting the law of a state with no substantial connection with the contract. We have already noted the legitimate connections of Oklahoma to this contract and the parties intent. The appellant has made no showing nor does the evidence suggest a cloak of usury surrounding the transaction and neither was there any evidence of enticement, solicitation, overreaching or any unconscionable act by the appellees.

Here, as in *Grogg*, there are substantial connections to both states. The appellant, without solicitation or any underhandedness by the appellee sought out St. Charles at their Memphis office; the contract was signed in Tennessee; performance took place in both states; the contract stated that it was not binding unless accepted in Tennessee; and the 10% interest rate was clearly stated on the statements sent to the appellant by St. Charles. The appellant has also failed to demonstrate that "a cloak of usury" surrounded the transaction. Therefore, we choose the law of Tennessee, the law of the state that will make the contract valid rather than void.

We need not address the other issues raised by appellant in light of our holding. Arkansas usury law does not apply to a Tennessee contract. The Wingo Act, Ark. Stat. Ann. § 64-1201 (Supp. 1980), does not apply to out of state contracts. *Brown Broadcast, Inc.* v. *Pepper Sound Studio, Inc., et al,* 242 Ark. 701, 416 S.W.2d 284 (1967).

Affirmed.